**GENERAL MOTORS ACCEPTANCE CORPORATION**

v.

**Richard G. LEFEVRE, Jr., and Andrea M. Lefevre.**

**Civ. A. No. 83–93.**

United States District Court, D. Vermont.

Oct. 11, 1983.

---

Robert Bing, Burlington, Vt., for plaintiff.

James B. Anderson, Ryan, Smith & Carbine, Rutland, Vt., for defendants.

## OPINION AND ORDER

COFFRIN, Chief Judge.

This is an appeal from Bankruptcy Judge Marro's order, 27 B.R. 40, dismissing the defendant-debtors' counterclaim and lifting the automatic stay authorizing the plaintiff-creditor to repossess a GMC pickup truck. For the reasons below we affirm Judge Marro's order.

## THE FACTS

The debtors are Mr. Richard Lefevre and Mrs. Andrea Lefevre. On March 2, 1982, debtor Richard G. Lefevre financed the purchase of a 1982 GMC pickup through the plaintiff, General Motors Acceptance Corporation (GMAC). The price of the truck was $7,797, of which $1,300 was paid as a downpayment and $6,396 was borrowed. A note signed by Mr. Lefevre provided for 48 monthly payments of $187.32 each, for a total amount to be paid of $10,291.35. Under this installment contract, signed only by Mr. Lefevre, a security interest in the truck was granted to the plaintiff.

On the same day debtors Richard and Andrea Lefevre completed a Vermont Department of Motor Vehicles application for vehicle registration, tax and title. This recited Richard and Andrea Lefevre as co-owners of the truck and the plaintiff as first lienholder. A certificate of title was later issued by the department listing the debtors as co-owners and GMAC as first lienholder.

Four months later the debtors filed a petition for relief under Chapter 13 of the Bankruptcy code. When the plaintiff filed a complaint for relief from an automatic stay, the debtors were in default for 3 monthly payments and the current balance then due on the truck was $8,612.72. It has a value of about $6,600.

### Discussion

Defendant asserts two grounds for reversing the Bankruptcy Court's order. First, debtors assert that they hold the truck as tenants by the entirety. As such Mrs. Lefevre has an undivided ownership interest in the truck which cannot be attached to satisfy debts which are Mr. Lefevre's alone, and because Mrs. Lefevre never gave GMAC a security interest in the truck, the debtors conclude that she can claim it as exempt under 11 U.S.C. § 522(b)(2)(B). Second, relying on 11 U.S.C. § 1325, the debtors argue that G.M.A.C. and the Bankruptcy Court should be forced to confirm the debtors' plan to pay their debts because it provides that G.M.A.C. will retain a lien on the vehicle, and will be paid the secured portion of the balance due ($6,600) over a three year period.

Judge Marro found that the debtors did not own the truck as tenants by the entirety and that therefore the truck could not be claimed as an exemption. He reasoned that there was no evidence to support the debtors' claim that Mr. Lefevre made a gift of the truck to Mrs. Lefevre, thereby creating the entirety interest. The determination of what ownership interest the evidence indicates is factual.[1] This court is constrained to accept factual findings unless they are clearly erroneous. Fed.R.Civ.P. 52(a); Bankruptcy R. 810; *In*

---

1. Tenancies by the entirety in personal property are recognized in Vermont. *Swanton Savings Bank v. Tremblay*, 113 Vt. 530, 37 A.2d 381 (1944). We conclude that whether such an interest exists is a factual issue which turns on circumstances and the intent of the parties. See *Beacon Mill. Co. v. Larose*, 138 Vt. 457, 460, 418 A.2d 32 (1980), where factors such as the circumstances surrounding the creation of the interest, the intention of the parties, and the sources of the funds, were relevant to a determination of whether a husband and wife held a bank account as tenants by the entirety.

*re Adlman,* 541 F.2d 999, 1005 (2d Cir. 1976).

 We cannot find that Judge Marro's interpretation of the facts is clearly erroneous. The only evidence presented to support the debtors' tenants by the entirety theory was that they both signed the application for title as co-owners. Mr. Lefevre alone signed the financing note, and the record suggests that Mrs. Lefevre signed the application for title only because the dealer had prepared the application in their joint names and then requested both signatures rather than prepare a second form. (# 16, transcript of hearing on motion for summary judgment p. 3). *Compare In re Corsi,* 24 UCC Rptr. 216 (Bkrtcy.D.Vt.1978) (gift theory supported by fact of purchase by husband but application for title solely in wife's name); *In re Bosson,* 21 UCC Rptr. 1456, 1460 (D.Conn. 1977) (car salesman testified purpose of listing wife as sole owner was to make gift). Absent an intent to make a gift, it follows that at least for purposes of this debtor-creditor relationship, Mrs. Lefevre had no interest at all in the truck and therefore could claim no exemption.

 ▪Since we do not disturb Judge Marro's ruling that Mr. Lefevre had the only effective ownership interest for these purposes, we also agree that the documents signed and filed here adequately created and perfected an enforceable security interest held by GMAC in the truck. Under Vermont law, creation of an enforceable security interest requires a writing, signed by the debtor, containing an adequate description of the collateral, and indicating an agreement creating a security interest. Vermont law also requires that

value (a loan) have been given pursuant to that agreement, and that the debtor have obtained rights in the collateral. Vt.Stat. Ann. tit. 9A, § 9–203(1)(b), § 9–204(1) (1966). The only possible difficulty here is that Mr. Lefevre did not sign a ·formal security agreement. We agree with Judge Marro, however, that § 9–203(1)(b) does not require a separate formal document entitled "security agreement," and that the financing note and application for title are sufficient. Both documents referred to GMAC as the first lienholder, described the truck as collateral, and were signed by Mr. Lefevre. Together they satisfy the underlying purposes of § 9–203(1)(b), namely to prevent a dispute as to precisely what property is encumbered and to avoid enforcement of claims based solely on oral representations. *See In re Numeric,* 485 F.2d 1328 (1st Cir.1973); *Finley v. Williams,* 142 Vt. 153, 155, 453 A.2d 85 (1982).[2] The title application alone satisfies the requirement for perfection of a security interest in a motor vehicle. Vt.Stat.Ann. tit. 23, § 2042(b) (1978).

 The other issue before us is whether the relief granted GMAC from the automatic stay was proper as provided by 11 U.S.C. § 1325(a)(5)(B). This section requires that the debtors' plan to reschedule their debts shall be confirmed if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of (the allowed secured) claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). The Lefevres argue that the secured portion of GMAC's claim is the fair market value of the vehicle ($6,600), and that because the plan provides for the payment of that value

---

**2.** Section 9–105(1)(h) defines a security agreement as "an agreement which creates or provides for a security interest. And section 1–201(3) defines agreement as "the bargain of the parties in fact as found in their language or by implication from other circumstances." Some courts have interpreted this language to permit gleaning the intent of the parties from several documents. *In re Bollinger,* 614 F.2d 924 (3d Cir.1980); *In re Amex-Protein Development Corp.,* 504 F.2d 1056 (9th Cir.1974); *In re Numeric Corp.,* 485 F.2d 1328 (1st Cir.1973); Vt. Stat.Ann. tit. 9A § 9–203 Comment 4. While

others have taken a more formal line and have required language in an agreement which specifically grants a security interest. *American Card Co. v. H.M.H. Co.,* 97 R.I. 59, 196 A.2d 150 (1963). We find the former position more tenable as it complies with section 1–102 of the Code which provides that the "Act shall be liberally construed to ... permit the continued expansion of commercial practices through custom, usage and agreement of the parties. Vt.Stat. Ann. tit. 9A § 1–102. *See* White & Summers, Uniform Commercial Code (1st ed. 1972), p. 290–291.

over 3 years the plan must be approved. GMAC counters that the plan was justifiably rejected because it provides less than the value of the secured claim. We agree with GMAC.

Chapter 13 requires a valuation of the consideration to be provided in a plan "as of the effective date of the plan." 11 U.S.C. § 1325(a)(5)(B). "This contemplates a present value analysis that will discount value to be received in the future." H.R. Rep. No. 598, 95th Cong.2d Sess. 414, *reprinted in* 1978 U.S.Code Cong. & Ad. News 6370. Because the debtors' plan does not discount value to be received over the three years of the plan, it fails to provide GMAC with the value of its secured claim. 11 U.S.C. § 1325(a)(5)(B)(ii). 3 Collier's Bankruptcy ¶ 1325.-01(2)(E)(2)(b)(ii)(A)(b)(ii) (15th ed. 1982). Judge Marro, therefore, rightfully rejected the plan and dismissed the debtors' counterclaim, under 11 U.S.C. § 1307(c)(4).

In light of the foregoing, the Bankruptcy Court's order dismissing the debtors' counterclaim and lifting the automatic stay is affirmed.