**In re WINCORP, INC., Samuel D. Winn, Debtor.**

**ENTERPRISE FINANCIAL CORP., a Georgia corporation, Plaintiff,**

**v.**

**Samuel D. WINN, Defendant.**

**Bankruptcy Nos. 94–13380–BKC– AJC, 94–13380–BKC–AJC. Adv. No. 94–1219–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

July 24, 1995.

Michael Ullman, Kimberly Rangel, Ullman & Ullman, P.A., North Miami Beach, FL, for defendant.

Andrew Hellinger, Mishan, Sloto, Hoffman & Greenberg, Miami, FL, for plaintiff.

### ORDER ON PLAINTIFF'S OBJECTIONS TO EXEMPTIONS

A. JAY CRISTOL, Chief Judge.

**THIS MATTER** came before the Court on February 9, 1995, upon Plaintiff ENTER-PRISE FINANCIAL CORP's ("Plaintiff" or "Enterprise") Complaint which seeks a decla-ration that various assets scheduled as ex-

empt by the Debtor SAMUEL D. WINN ("Debtor" or "Mr. Winn") be declared non-exempt and be made available for distribution.[1] The Court heard the testimony, examined the evidence, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

This Chapter 7 case was filed by Debtor on August 18, 1994. Mr. Winn was born on December 25, 1910 and was married to his wife, Eve, on August 28, 1935. Mr. and Mrs. Winn have been continuously married ever since. By the late 1970s both of Mrs. Winn's parents had passed away and she inherited approximately $150,000.00. Upon Mrs. Winn's receipt of her inheritance she and Mr. Winn began to purchase various types of bonds. Mr. and Mrs. Winn began a relationship with First Miami Securities and a broker there named Mario Lafiosca. Mr. Lafiosca died in 1994. Over the years, Mr. and Mrs. Winn sold certain bonds and purchased others, while others were liquidated as a result of their having been "called" by the respective issuers. Mr. and Mrs. Winn also have been collecting social security benefits since 1965. All of their social security benefits have, by direct electronic transfer, been deposited into one of their Commercial Bank of Florida bank accounts.

Of the various property scheduled by Mr. Winn on his bankruptcy schedules, the property that Enterprise seeks to declare non-exempt consists of two Commercial Bank of Florida checking accounts[2] and eight tax exempt bonds. Some of the bonds are held in the names of "Sam D. Winn and Eve Winn as Joint Tenants" while others are held as "SD Winn & Eve Winn JT TEN" or "SD &

EVE WINN JTWROS" or "MR. S D WINN & EVE WINN JT TEN."

Mr. Winn asserts that he and his wife's bonds and checking accounts are exempt under § 522(b)(2)(B) because the bonds and checking accounts are held as tenants by the entireties. He also asserts that one of the two checking accounts is exempt because it exclusively contains social security benefits. Social security benefits may be scheduled as exempt in accordance with 11 U.S.C. § 522(d)(10). Enterprise claims that these assets are joint tenancy property and subject to the claims of creditors.

Enterprise submits that it is Debtor's responsibility to affirmatively demonstrate that a tenancy by the entirety exists and argues that it has no affirmative obligation to come forward with evidence negating the existence of the claimed exemption or immunity. The Court rejects this argument. Bankruptcy Rule 4003(c) specifically states that the objecting party has the burden of proving that exemptions are not properly claimed. F.R.B.P. 4003(c). See also, *In re Makarewicz*, 126 B.R. 127 (Bankr.S.D.Fla. 1991) (objecting party has burden of proof that debtor is not entitled to exemption). Accordingly, it is Plaintiff's responsibility to introduce evidence establishing that one or more of the requisite unities necessary to create a tenancy by the entirety are not present or, if they all are present, that (a) it was never the intention of the parties to create a tenancy by the entirety and (b) there exists a joint creditor of both Mr. Winn and Mrs. Winn.[3]

To prove its case, Plaintiff called several witnesses. Enterprise called a Commercial Bank of Florida representative, Elaina Corea, as a witness. Through her testimony there was introduced the Winns' signature

---

1. Although an objection to exemptions is generally filed in the main case pursuant to Bankruptcy Rule 4003, the Plaintiff brought a two count adversary complaint. Count I seeks to declare non-dischargeable any debt due Plaintiff, pursuant to § 523(a)(2)(A), while Count II objects to Debtor's claimed exemptions. Pursuant to a motion made by Debtor's counsel, the two counts were bifurcated so that the trial on Count II would precede the action seeking to except Plaintiff's debt from discharge.

2. Commercial Bank of Florida account numbers 0205173857–06 and 0205173857–07.

3. Enterprise does not argue that one or more of the requisite essentials necessary to create a tenancy by the entirety was not met. Therefore, the Court need only look to Mr. and Mrs. Winn's intent when the accounts were created and bonds purchased.

card and new account application form. Those documents indicated that both bank accounts were opened with the designation "Sam D. Winn, Eve Winn." There was no designation as to whether or not the account was "and" or "or." The account was not designated as a "tenancy by the entireties" or under any other specific title. Ms. Corea indicated that the customer had the right to choose whether or not an account would be considered a joint account or an account in the name of tenancy by the entireties. She was, however, unable to identify any particular business routine practice the bank might have had to inform the customer as to the various types of accounts that existed. Indeed, Ms. Corea testified that it would be up to the individual bank officer to explain, if asked, the types of accounts available, as well as what those accounts meant or how they differed. There was no testimony whatsoever offered by the Plaintiff to demonstrate that Mr. and Mrs. Winn were made aware that an account called a tenancy by the entireties account existed or that they were informed of such and rejected that form of account. To the contrary, Mr. Winn testified that when he went to the bank and inquired of the method within which the account should be opened, he indicated to the bank representative that he wished to have the accounts held so that he and his wife were fully protected. Mr. Winn testified that he relied upon the account representative to select that form of legal ownership consistent with his expressed intent.

Plaintiff also called as a witness First Miami Securities representative, Edward Markel. Mr. Markel is Vice–President and General Manager of First Miami Securities. Through Mr. Markel Enterprise introduced a copy of the Winns' new account card. Mr. Markel testified that the legally permitted forms of bond ownership available to a customer included the forms known as tenants in common, joint tenant with right of survivorship, as well as tenancy by the entireties. However, since the Winns' broker, Mr. Lafiosca, died last year, Mr. Markel did not have personal knowledge, and therefore was unable to testify as to what Mr. Lafiosca had discussed with Mr. Winn. Just as with the Commercial Bank of Florida, Mr. Markel indicated that there was no routine business practice or policy to offer advice to the respective customer as to the form of title that bonds could or should be held.

Mr. Winn testified that he did not recall the exact words he used as to the form of title to take when he and his wife requested their broker to purchase the bonds. He did recall, however, that he specifically explained to Mr. Lafiosca that he wished to have he and his wife, Eve, fully protected. Mr. Winn testified that "fully protected" meant that in the event anything were to happen to one spouse, or upon either's death, the other spouse would be protected. Mr. Lafiosca, unfortunately did not provide Mr. Winn with a set of choices as to what type of title he could hold the bonds. Mr. Winn testified that he relied upon his broker to select that form of legal ownership consistent with his expressed intent.

Mr. Winn also testified that at the time he and his wife purchased the bonds they were in no fear of losing their assets, were not advised by Enterprise of any claim or potential claim, and, indeed, were not immediately concerned about any claim or suit that might be brought against them by anyone. Indeed, some of the bonds were purchased in the 1980s, far in advance of any of the problems that arose between Mr. Winn and Enterprise. Mr. Winn testified that he and his wife always had joint ownership and control over both the bank accounts and the bonds, that they had at all times held the same interest in both the accounts and the bonds, that the documentation establishing the bank accounts, as well as the brokerage account, established their relationships with the respective companies, that when the bank accounts and the brokerage accounts were started, and at all times thereafter, he and his wife's interest began together or at the same time.

It was not until the latter part of 1993 that Enterprise filed suit against various parties, including Mr. Winn. Mrs. Winn is neither a party defendant to this litigation nor did Enterprise introduce any testimony that any of the claims brought by Enterprise against

Mr. Winn would also have included any claim against his wife.

### CONCLUSIONS OF LAW

Under § 522(b)(2)(B) of the Bankruptcy Code, a person is entitled to exclude from the bankruptcy estate "... any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(2)(B). See also, *In re Colston,* 87 B.R. 193 (Bankr.M.D.Fla. 1988).

 Under Florida law, when property is held as tenancy by the entirety, it cannot be reached by a creditor to satisfy the individual debt of one spouse.[4] *In re Blum,* 39 B.R. 897 (Bankr.S.D.Fla.1984). The issue in this matter, therefore, is whether personalty scheduled by Mr. Winn as exempt are held as tenants by the entirety under Florida law and, therefore, exempt from the bankruptcy estate.

Florida law defines what is required for a tenancy by the entirety to exist. The most appropriate starting point is the decision of the Supreme Court of Florida in *First National Bank of Leesburg v. Hector Supply Co.,* 254 So.2d 777 (1971). The issue in that case was whether a joint checking account, maintained by a husband and wife, could be legitimately garnished for payment of the husband's judgment debt. The trial court held that the account could not be maintained as an tenancy by the entirety. The District Court of Appeal affirmed, basing its decision upon the wording of the signature card which identified the Petersons as owning all funds in the account jointly, with a right of survivorship. Moreover, the account was established in the name of the husband or the wife and there was an arrangement for individual withdrawal rights by the respective spouses. The Florida Supreme Court reversed and

remanded the case for further proceedings consistent with the opinion. Of significance to this court is the historical approach taken by the Supreme Court in its decision. The court, citing Bishop, *I Law of Married Women,* 140 § 211, stated:

> If real estate is conveyed by a deed to a husband and his wife, this creates in them a particular kind of tenancy, known as tenancy by the entirety.... Nothing of this sort is known in respect of personal property. Since the wife cannot own personal property in her possession in her own right, but whatever title she has in such property vests in the husband, if a chattel is given or sold to the husband and wife jointly the title passes wholly to him.

Historically, under the common law, the husband became the outright owner of his wife's personal property. See, *Dollner v. Snow,* 16 Fla. 86 (1877). In *Hector Supply,* the Florida Supreme Court recognized that the doctrine that a wife cannot own personal property in her own right had long since passed. The court noted that in accordance with Florida Statute § 2.01 and various English decisions which recognized that a tenancy by the entirety in personalty could be recognized prior to 1776 in certain cases, "One could fairly say that the entireties theory was applied to personalty in instances where equity chose to support the wife less she be unjustly deprived of her personal property, or in instances where profits and monies derived from land held by the entireties was transformed into choses in action."

The court in *Hector Supply* also noted that, historically, there existed certain distinctions between realty and personalty in the application of the tenancy doctrine. In realty matters, where property was acquired specifically in the name of husband and wife, there was a presumption that a tenancy by the entireties was created. But in personalty matters, the intention of the parties must be proven.

---

4. However, a common creditor of the husband and wife may reach property held by them as tenants by the entirety. *In re Lausch,* 16 B.R. 162 (Bankr.M.D.Fla.1981). Thus, a debtor's interest in property held with his wife as tenants by the entirety is includable in the debtor's estate where the debtor and his wife have a common creditor who has a judgment on the property. Because Enterprise is not a common creditor of both Mr. and Mrs. Winn, this is not an issue here.

■ Times have changed. The "good old days" where women could not own personal property, or were themselves considered personal property, are gone. As the saying goes, "We've come a long way, baby." This Court can see no reason why the same presumption that applies to a conveyance of realty to a husband and wife should not apply to personalty held by a husband and wife. In fact, the Court believes there is such a presumption. Presumptive tenancy by the entirety in personal property was first recognized in *In re Luna*, 100 B.R. 605 (Bankr. S.D.Fla.1989). In that case the court concluded that there can be presumptive type of tenancy by the entireties in personal property. The court determined that the concurrence of the lapse of a number of years of marriage between the debtor and his or her spouse, the continuous possession of the articles of personal property in question, and the testimony by the debtor or the debtor's spouse that, upon the death of the debtor, the personal property in question would not be returned to the original purchaser or donor of the personal property, creates a presumption of an intent by the debtor and his or her non-debtor spouse to create a tenancy by the entireties in personal property.

In *In re Richardson*, 151 B.R. 613 (Bankr. S.D.Fla.1993), the court was presented with the issue of whether an account receivable allegedly owed to both the debtor and his wife would be classified as tenancy by the entirety property. The court in *Richardson* reaffirmed the decision of *Luna*, and expressly recognized that in this District presumptive tenancy by the entirety in personal property based upon the concurrence of the lapse of a number of years of marriage, continuous possession of the articles in question and testimony that the property would not return to an original purchaser or donor in the event of death may arise.

In *Marine Midland Bank—New York v. Arms*, 409 So.2d 215 (Fla. 4th DCA 1982) the court considered whether a bank account opened in the name of a husband OR his wife could be held as tenancy by the entirety and therefore exempt from garnishment proceedings brought against the husband alone. The court wrote:

By itself, a bank account issued in the name of a husband OR his wife would not be sufficient to establish any kind of joint tenancy. However, in the case before us the signature card in the appropriate box marked "joint account" and the language of the accompanying appropriate paragraph to the check box sets forth that all of the funds may be withdrawn by "either one or both or the survivor."

These facts, coupled with the testimony of the husband to the effect that both he and his wife "owned" the account and the further showing that the money to create the account came from assets owned solely by the wife, were more than sufficient to sustain the trial court's conclusion that the intention of the parties was to create a tenancy by the entireties.

*Marine Midland Bank—New York v. Arms, supra*, at 215.

■ The facts of the case at hand are even more compelling than the facts in *Marine Midland*. In this case, after years of marriage the Winns have jointly deposited their monies into their joint bank accounts. All of the unities have been established. Indeed, not only has Enterprise failed to negate the unities or the element of intent of the parties, but based upon the evidence presented, the evidence affirmatively demonstrates the intention of the parties to create a tenancy by the entireties with their personalty. The Court heard the testimony of Mr. Winn and found him quite credible.

■ Enterprise submits that in considering whether the requisite intent exists to create a tenancy by the entirety, some proof beyond the mere testimony of the debtor or spouse is required. The debtor must prove that the tenancy was not a "hurried, after the fact creation," used to insulate property from the creditors' claims. *In re Stanley*, 122 B.R. 599 (Bankr.M.D.Fla.1990) and *In re Shaland*, 133 B.R. 166 (Bankr.S.D.Fla.1991). This Court finds no justification for a suggestion that a debtor and the debtor's spouse are not competent to testify as to their intention of ownership. On the other hand, it is the Court's opinion that the general proposition cited above means that when a debtor testifies as to the creation of a tenancy by

the entireties, the inferences and surrounding circumstances cannot be ignored and the debtor or his spouse's testimony of intent may be overcome if such surrounding circumstances or reasonable inferences demonstrate that a debtor's effort to qualify property as tenancy by the entireties was a hurried, after the fact effort and for the purpose of insulating property from creditors' claims.

The evidence in this case clearly demonstrates that for the many years during which Mr. and Mrs. Winn were acquiring their bonds, and making deposits to their checking accounts, there were no creditors or creditor activities to establish that Mr. and/or Mrs. Winn acquired any of their property, currently claimed as tenancy by the entireties, under circumstances where their efforts were hurried or after the fact for the purposes of insulating any of their property.

■ Enterprise further argued that because Mr. Winn did not even understand the legal significance of a tenancy by the entirety, he couldn't possible have intended to hold his property as such. This argument is as persuasive as saying that because a person does not understand the specific rights provided under our Bill of Rights, he or she could not possibly be entitled to its protections (e.g., a right to a jury trial). The testimony of both Ms. Corea from the Commercial Bank of Florida and Mr. Markel of First Miami Securities established that any legal form of ownership was available to Mr. and Mrs. Winn. The fact that they did not select, by using the buzz words "tenancy by the entirety," to title their account in that form does not persuade this Court that they did not intend the accounts or their bonds to be held in that form.

■ It is clear to the Court that the testimony of Mr. Winn demonstrated that he did, indeed, have the requisite intent with regard to the two bank accounts and bonds to establish a tenancy by the entirety, and the sched-

uled personalty are therefore determined exempt. Moreover, while both checking accounts have been determined exempt, the Court notes that the Commercial Bank account containing social security benefits exclusively[5] is additionally exempt under Fla. Sat. § 221.201(1) and § 522(d)(10)(A).[6]

Based on the foregoing, Plaintiff's Objections to Exemptions are OVERRULED. A separate final judgment will be entered in accordance with Rule 9021.

---

**5.** Mr. Winn's testimony was undisputed that one of the two Commercial Bank accounts exclusively contained social security benefits.

**6.** Florida Statute 222.201(1) provides that an individual debtor may exempt, in addition to any other exemptions allowed under state law, any

property listed in subsection (d)(10) of § 522 of the Bankruptcy Code. 11 U.S.C. § 522(d)(10)(A) provides that the debtor's right to receive "a social security benefit, unemployment compensation, or a local public assistance benefit" is exempted.