In re Warren McNEILLY, Jr., Debtor.

Warren McNeilly, Jr., Appellant,

v.

Louis A. Geremia, Chapter 7 Trustee
and Revolution Portfolio LLC,
Appellees.

No. RI 99–106.

United States Bankruptcy Appellate Panel
of the First Circuit.

June 21, 2000.

Peter G. Berman and Raskin & Berman, for the Appellant.

Lisa A. Geremia and Geremia & DeMarco, for appellee Louis A. Geremia and Donn A. Randall, Gretchen A. Althoff and Sally & Fitch, for Appellee Revolution Portfolio LLC.

Before GOODMAN, HAINES and FEENEY, U.S. Bankruptcy Judges.

1. Unless otherwise designated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 *et seq.*

2. Trustee's Objection to Debtor's Exemption in a Bank Account Pursuant to 11 U.S.C.

HAINES, Bankruptcy Judge.

Chapter 7 debtor Warren McNeilly, Jr., appeals the bankruptcy court's order sustaining Trustee Louis Geremia's objection to his claim of exemption in tenancy by the entirety property, namely a Vermont bank account holding $29,991.55. For the reasons set forth below, we reverse.

### Background

McNeilly filed a voluntary Chapter 7 petition on August 17, 1999. In his amended schedules he claimed exemptions under Bankruptcy Code § 522(b)(2).[1] Among the items he claimed as exempt was his undivided interest in a Vermont bank account ostensibly held as a tenant by the entirety with his wife. The trustee objected to this exemption, asserting that "the debtor's claimed exemption in a bank account with a value of $29,991.55 pursuant to 11 U.S.C. [§ ]522(2)(B) . . . is not properly exempt under Rhode Island state law exemptions."[2]

The issue proceeded to hearing. No evidence whatsoever was adduced. The parties simply argued their positions. The following facts were not disputed:

1. On July 20, 1998, McNeilly and his wife sold Rhode Island business/investment property held as tenants by the entirety, receiving net proceeds of approximately $62,000.00.

2. After applying a substantial portion of the net proceeds to pay down their residential mortgage, the McNeillys placed "approximately $30,000.00" in a "household account" at the Bank of Newport, where they were commingled (to an undetermined extent) with other funds.

3. In 1999, on advice of counsel, the McNeillys withdrew $29,991.55 from the Bank of Newport account and deposited this sum in a Vermont bank.[3] The Ver-

§ 522(b)(2)(B), Appellant's Appendix (hereafter "App.") at 38.

3. During the hearing, trustee's counsel once asserted the Vermont account was opened in January 1999. However, she twice stated that is was opened in April 1999, which ac-

mont account was formally denominated a tenancy by the entirety account.[4]

At the hearing, the trustee shifted gears. Rather than arguing that the Code precludes a Rhode Island debtor who has elected state exemptions pursuant to § 522(b) from claiming an exemption in Vermont entirety property, he contended that such a claim was unsupportable because the funds had been commingled and the debtor could not trace them to entirety property sales proceeds. His counsel argued:

> It is the trustee's position that the proceeds were in the debtor's control from July 1998 until April of 1999. Originally those proceeds were deposited in a Bank of Newport account, which was the debtor's household account, that those proceeds have been commingled with household funds for over nine months until such time as they were deposited in that Vermont state account.
>
> I think it would be very difficult, or I think it is the debtor's burden to prove that those proceeds are the same proceeds that were netted from the sale of that tenants-by-the-entirety property in July of '98. I don't think that there is any way to trace the funds, and I think it would be the debtor's burden to prove that that [$]30,000 was the same [$]30,-000 that he received from the net proceeds from the sale of that land; therefore, the trustee objects to the debtor's exemption.[5]

In response, the debtor asserted he had no duty to trace the funds. He suggested that he could have placed more than the remaining sales proceeds in an entirety account and claim all of it exempt under § 522(b)(2)(B) since,

> the tenants-by-the-entirety account is exempt because of its status as a tenants-by-the-entirety account. If this were not a case where we were being— if this were a case where we were extremely conservative in pre-bankruptcy planning, I think arguably we could have moved all of the liquid funds into [a] tenants-by-the-entirety account pre-bankruptcy and defended that, but we did not do that. We simply took out the $30,000 which had been put in there from the sale of the tenants-by-the-entirety real estate. We didn't even take out any of the interest. I mean it had been in there for a year. We were so conservative we simply took out the $30,000 we put in when we sold the real estate and segregated it in another account so that our legal argument would be clear with respect to those funds.[6]

Ruling from the bench, gleaning the facts from such undisputed representations of counsel as there were, the bankruptcy judge sustained the trustee's objection, adopting the trustee's articulated rationale. McNeilly moved for a stay pending appeal, which was granted without opposition, and appealed.[7]

---

cords with her representation that nine months elapsed between the sale of the Rhode Island real estate and the establishment of the Vermont account.

4. McNeilly asserts that $29,991.55 represented all remaining proceeds from the sale of the Rhode Island entirety property (with no interest). Although he concedes that the sale proceeds may have been commingled, he asserts that the balance in the Bank of Newport account never fell below $29,991.55 after the proceeds were deposited in it. Neither party introduced evidence on either point.

At oral argument, McNeilly's counsel also explained that the account was opened in a

Vermont bank because banks there open tenancy by the entirety accounts as a matter of course, whereas Rhode Island banks do not. The record is devoid of evidence on the point.

5. Transcript of November 23, 1999, hearing (hereafter "Tr.") at 6, App. at 52.

6. Tr. At 8, App. at 55.

7. Revolution Portfolio LLC appeared at the hearing below and participated in this appeal as a co-appellee. Its arguments are similar to the trustee's and will not be treated separately in this opinion.

## Discussion

I. *Four Petit Preliminaries: Finality, Jurisdiction, Standard of Review, and Burden of Proof*

■ The bankruptcy court's order sustaining the trustee's objection to the debtor's exemption is a final order. *See Howe v. Richardson (In re Howe),* 232 B.R. 534, 535 (1st Cir. BAP 1999)("Although other issues may remain for resolution in a case after the determination of the Debtor's claimed exemptions, orders granting or denying exemptions are appealable as final orders."); *accord Preblich v. Battley,* 181 F.3d 1048, 1055–56 (9th Cir.1999) (thorough discussion of finality in the context of contests over exemptions). We have jurisdiction pursuant to 28 U.S.C. §§ 158(a)(1) and (b)(1). *See In re Howe,* 232 B.R. at 535.

■ Our scope of review is *de novo.* The bankruptcy court determined the dispute regarding the exempt status of the Vermont account based on the undisputed facts. McNeilly challenges only the court's legal conclusions. *See Edmonston v. Murphy (In re Edmonston),* 107 F.3d 74, 75 (1st Cir.1997); *In re Howe,* 232 B.R. at 535; *Bruin Portfolio, LLC v. Leicht (In re Leicht),* 222 B.R. 670, 671 (1st Cir. BAP 1998).[8]

■ With regard to proof and persuasion, an exemption claim is *prima facie* valid absent a timely objection. *See* § 522(*l*) ("Unless a party in interest objects, the property claimed as exempt ... is exempt."); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)(though the claimed exemption in a lawsuit's proceeds was in excess of what was permitted under state or federal law, its validity could not be challenged once the objection period had elapsed); *In re Edmonston,* 107 F.3d at 76 ("[A]n exemption claim becomes effective by operation of law absent a cognizable objection.").

■ As the objecting party, it was the trustee's burden to prove McNeilly was not entitled to exempt the account at issue. The Federal Rules of Bankruptcy Procedure are crystal clear:

> Burden of Proof. In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

Fed. R. Bank. P. 4003(c). *See also Enterprise Fin. Corp. v. Winn (In re Wincorp, Inc.),* 185 B.R. 914, 916 (Bankr.S.D.Fla.1995)(rejecting arguments that the debtor must affirmatively demonstrate the existence of a tenancy by the entirety account and that the objecting party has no affirmative duty to negate the existence of such an interest, citing Rule 4003(c), and requiring the objecting party to introduce evidence that the necessary prerequisites for the entirety interest under state law were absent). *Contra In re Bundy,* 235 B.R. 110, 112 (Bankr.M.D.Fla. 1999) (debtor has burden of proving entirety interest in personal property under Florida law.)[9]

The trustee had fair opportunity to frame the issue and persuade the court. The evidentiary foundation for this contest is feeble. The trustee rested entirely on

---

**8.** The trustee's suggestion that we apply the standard of review applicable to fee allowances, abuse of discretion, is off-the-mark.

**9.** Because the trustee's objection turned on a legal rather than a factual dispute, this is not a case in which we need inquire whether the objecting party proved-up sufficient facts to shift the burden of production back to the debtor. *See In re Cole,* 185 B.R. 95, 96–97 (Bankr.D.Me.1995)(if the objecting party rebuts the *prima facie* exemption claim, the burden of production, but not of persuasion, falls on the debtor); *accord Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999)(discussing the burdens of proof, production, and persuasion in exemption disputes, requiring a shifting of the burden of production, but not persuasion, to the debtor when the objecting party "produce[s] evidence to rebut the presumptively valid exemption").

his legal argument that commingling the proceeds of Rhode Island entirety property with non-entirety monies in a non-entirety Rhode Island account defeated McNeilly's claim to an entirety interest in the Vermont account.

This is not a review of a summary judgment order, for which unresolved, material issues of fact would warrant remand. *See* Fed. R. Bankr.P. 7056; *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36–37 (1st Cir.1995). The trustee had his opportunity to develop sufficient factual support for his legal argument. The question for us is whether the scant facts he developed can sustain his position under the accurate, applicable legal principles.

## II. *Identifying Applicable Nonbankruptcy Law*

■ Under § 522(b) a Rhode Island debtor may exempt property from the bankruptcy estate under one of two alternative exemptions schemes. *See* § 522(b).[10] McNeilly claimed his exemption under subparagraph (2) which affords for exemptions in:

> (A) any property that is exempt under Federal law, other than [the alternative federal exemptions delineated in the Code], or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; *and*
>
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as

a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

§ 522(b)(2)(emphasis added). He is entitled to any claimable exemptions under subsection (B), as well as those under subsection (A). *See In re Cochrane*, 178 B.R. 1011, 1019–20 (Bankr.D.Minn.1995)(use of the conjunction "and" indicates that Congress intended the subsection (2) exemption categories to be cumulative).

Thus, the precise question is whether the trustee proved that immediately before the commencement of his bankruptcy case McNeilly did not have an interest in the Vermont account as a tenant by the entirety that was "exempt from process under applicable nonbankruptcy law."

■ Absent some federal interest requiring a variant result, state law is the compass by which we ascertain the nature and scope of a debtor's property interests in a bankruptcy. *See Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (establishing this proposition); *see also Napotnik*, 679 F.2d at 318 ("Since property law in general and the law of co-tenancies in particular are creatures of state law, the 'applicable nonbankruptcy law' is the applicable ... law of tenancy by the entirety."); *In re Furkes*, 65 B.R. at 234 (debtor's tenant by the entirety interest in real estate subjected to "state law scrutiny," heeding *Butner*); *In re Cerreta*, 116 B.R. 402, 404, 406 (Bankr.D.Vt.1990)("Real property interests and, more specifically, the laws regarding tenants by the entireties are products of State Law.").

■ Unlike the state law governing exemption entitlements under subsection (A), the state law at play in § 522(b)(2)(B) is

---

**10.** The Vermont bank account comes into the bankruptcy estate until McNeilly successfully claims it as exempt. *See* § 541(a) (property of the estate); *id.* (b) (exclusions from property of the estate); *Napotnik v. Equibank and Parkvale Sav. Ass'n*, 679 F.2d 316, 318 (3d Cir.1982) (the existence of § 522(b)(2)(B) demonstrates a Congressional intent that ten-

ant by the entirety interests "be included in the estate in the first place"); *In re Furkes*, 65 B.R. 232, 234 (D.R.I.1986)("Courts construing the scope of 11 U.S.C. § 541(a) have uniformly held that a debtor's undivided interest in a tenancy by the entirety is included in his estate in bankruptcy, as are all of his legal and equitable property interests.").

not "keyed into the situs of the debtor's pre-petition domicile," here Rhode Island, but is determined by "the situs of the asset that is held by a debtor in bankruptcy as a tenant by the entireties." *In re Cochrane,* 178 B.R. at 1020 (addressing a claim of exemption in entirety property held in a non-domicile state, stating that the law of the debtor's domicile is "irrelevant" to § 522(b)(2)(B) determinations). *Cf. In re Cerreta,* 116 B.R. at 404–05 (in a matter involving Vermont entirety real estate, "[t]he 'applicable nonbankruptcy law' ... is Vermont law of tenancy by the entirety.").[11]

### A. *Inapplicable law: scotching In re Scott*

Before taking one step forward—into Green Mountain State law—we must take a step back to Virginia's Blue Ridge Mountains. This is because the trustee convinced the bankruptcy court that it could harvest principles pertinent to its decision from Virginia case law. Unhappily, the trustee miscalculated the need for such a trek and, in any event, misapprehended the substance of Virginia law.

### 1. *The Trustee's Argument*

The trustee convinced the bankruptcy court that generic principles of tenancy by the entirety jurisprudence, supposedly represented by Virginia case law, controlled the dispute before it. He argued that, having commingled proceeds from the sale of the Rhode Island entirety real estate in a non-entirety account, McNeilly had destroyed his ability to claim a § 522(b)(2)(B) exemption in the subsequent Vermont entirety account.

The trustee asserted that *In re Scott,* 199 B.R. 586 (Bankr.E.D.Va.1996) (Mitchell, J.),

> specifically tailored that exemption in a tenants-by-the-entirety account to say that the proceeds that are deposited must be the direct proceeds from the sale or liquidation of property held by the debtor as tenants-by-the-entireties. I think that—and the case said that there can be no tainting of other funds. The fact that the debtor sold the property in '98 and then held onto the property in an account which was commingled with other household funds and they were not deposited until April of '99, I think it is now the debtor's burden to prove that that [$]30,000 is the same [$]30,000 that resulted from the sale of that property.[12]

The bankruptcy court questioned whether the debtor could create a tenancy by the entirety interest in a Vermont account from a "totally different [$]30,000 that came from the lottery or something." [13] On the heals of an asseveration by the trustee that "all the cases" relied on by the debtor required a "direct link" or "nexus" between entirety real estate and the funds in an entirety account, the court articulated its ruling:

> I believe I'm going to follow the tracing theory and requirement and adopt the Trustee's argument without repeating it and without trying to reanalyze it, but for the reasons argued by the Trustee, the objection to the [exemption in the] $29,000 account ... is sustained.[14]

Here the court went astray. The Virginia law analyzed in *In re Scott* could, at best, be of marginal assistance in deciding this dispute (absent jurisprudential commingling of the law on entireties tenancies

---

**11.** We note that Congress omitted the 180 day domicile circumscription from exemptions claimed under subsection (B).

**12.** Tr: at 9–10, App. at 56–57.

**13.** The court's inquiry was apparently in response to the debtor's assertion that a valid

entirety account *could* be created out of whole cloth, so long as the funds derived from joint assets and state law recognized entireties interests in bank accounts.

**14.** Tr. at 11; App. at 58.

in these two jurisdictions). It did not deserve the pivotal weight given it by the bankruptcy judge.

To begin, even if Virginia law were pertinent or helpful, the trustee's take on it lays a false trail. He gave too much credence to *In re Scott,* failed to examine its limitations, and ignored a subsequent Virginia case which directly undermines his position.

## 2. *The Rise and Fall of In re Scott*

One of several contested exemptions claimed by the debtor Scott was a $300 bank account, allegedly exempt under § 522(b)(2)(B) because held as a tenant by the entirety with her spouse. *See* 199 B.R. at 590. The court observed that Virginia law recognized an entirety interest in real estate and in the proceeds of entirety real estate. *Id.* (citing *Oliver v. Givens,* 204

---

Va. 123, 129 S.E.2d 661 (1963) for the State's recognition of an entirety interest in the proceeds of entirety real estate). It observed that the "broad language" of the state's highest court in *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963) suggested that entireties interests could be held in personal property, without necessarily representing the direct proceeds of the sale or rents of entirety real estate. *Id.* Nevertheless, it put great weight on *Oliver's* observance that every reported case, in fact, involved personalty that was the direct proceeds of entirety real estate.[15] The *In re Scott* court also looked to its own prior case, *In re Zella,* 196 B.R. 752 (Bankr.E.D.Va.1996)(Mitchell, J.), in which it "ruled that a bank account would not be exempt under § 522(b)(2)(B) ... solely because it was held jointly by husband and wife." *In re Scott,* 199 B.R. at 590.[16] On

---

**15.** This key case by the State's high court on entireties issues warrants greater weight than the *In re Scott* court's second hand interpretation. *Oliver* provided:

> There is a conflict of authority as to whether an estate by the entirety can exist in personal property. Some courts take the view that such an estate is peculiar to and exists only in real property and cannot exist in personal property. However, according to the decided weight of authority, such an estate may exist in personal property as well as in realty ....
>
> According to the majority view, 'there is nothing in the character of personal property which precludes ownership of it by the entirety under the modern law, since the foundation of such ownership lies in the fact that in law a husband and wife are, or may be considered to be one person.' When they are deemed to be one person, a conveyance of personalty to, or its acquisition by, them in their joint names 'logically vests the entirety in that one, as in the case of a conveyance of land.'
>
> While the question has not been previously presented to this court, we agree with the reasoning of the majority view and hold that in this State personal property as well as realty may be held by a husband and wife as tenants by the entireties.

*Oliver,* 129 S.E.2d at 663 (citations omitted). Notably, *Owen* goes on to describe the relevance of the personalty's relations to the proceeds of real estate as demonstrating *a presumption* of an intent to so hold the personalty derived therefrom. *See id.* See also

---

*In re Wincorp, Inc.,* 185 B.R. at 918–19 (recognizing presumptive tenancy by the entirety in real estate and personalty where the property is acquired in the name of husband and wife). This is a far cry from requiring that funds be traced as proceeds from a prior tenancy by the entirety property as a *prerequisite* to a valid claim of tenancy by the entirety in the funds.

**16.** The description of this as "a ruling" is an overstatement, as the same court recognized in *In re Massey,* 225 B.R. 887 (Bankr.E.D.Va.1998)(Mitchell, J.), discussed *infra.*

In *In re Zella* Judge Mitchell first concluded that the account was exemptible as a § 522(b)(2)(B) tenancy by the entirety property because the sums in the account were indisputably proceeds from tenancy by the entirety real estate. *See* 196 B.R. at 757. He then, rather gratuitously, addressed the alternative contention by the debtor that the account was "independently protected by § 522(b)(2)(B)" as entirety property whatever the source of the funds. *Id.* The court stated that because all the reported cases in the jurisdiction recognized entirety accounts only in entirety real estate proceeds, it would not conclude "that a tenancy by entirety may be created in Virginia in personal property other than the proceeds of tenancy by the entirety real estate" "absent an authoritative ruling by the Supreme Court of Virginia, or an action by the Virginia General Assembly." *Id.*

the basis of these two observations, *without discussing commingling or "tainting" of funds*, the court denied Scott's exemption claim.

Later, the same bankruptcy judge revisited the issues. *See In re Massey*, 225 B.R. 887 (Bankr.E.D.Va.1998)(Mitchell, J.). In ruling on objections to claimed § 522(b)(2)(B) exemptions in stock and a brokerage account, the question before the court was "whether personal property which is *not* derived from tenancy by the entirety real estate may be held in that form of ownership and thereby protected against the claims of nonjoint creditors." *Id.* at 891.

In its "fresh review" of the question, the court stated that its two earlier discussions of entirety interests in personal property not derived from entirety real estate could be characterized as "dicta." *Id.* at 891–92. After reviewing the common law of spousal property interests; the impact of the Married Women's Property Act on tenancy by entirety doctrine; the teachings of *Oliver, supra,* and *Pitts v. United States,* 242 Va. 254, 408 S.E.2d 901 (1991); the limits of its own reasoning in *In re Scott* and *In re Zella;* and applicable Virginia statutes, Judge Mitchell concluded that the Virginia legislature "contemplated" the holding of corporate stock by entirety, that the brokerage accounts were sufficiently "allied" to corporate stock to extend the stock entirety rule to the brokerage account, and reserved a determination with respect to "other types of financial accounts." *Id.* at 895 & n. 6.

Thus, even if principles of Virginia law might have informed the lower court in assaying the content of Vermont tenancy by entirety law, *In re Scott* is an unreliable gauge. What is more, *In re Scott*—even without its subsequent defrocking—does not address the impact of commingling or any requirement for tracing.

**B.  Applicable Nonbankruptcy Law: Tenancy–by–Entirety in Vermont**

Although the trustee's argument below failed to illuminate the content of Vermont law, we could affirm the bankruptcy court's ruling if the factual record, such as it is, demonstrates that McNeilly's exemption claim must fail under that state's prerequisites for establishing a tenancy by the entirety in a bank account. As a result, we set foot in Vermont long enough to ascertain whether its law bars such a claim as McNeilly has made.

■■■ McNeilly cites *George v. Dutton's Estate,* 94 Vt. 76, 108 A. 515 (1920), in support of his claim that he is entitled to the exemption under Vermont law. That case propels him well on his way. *George* considered whether a husband and wife, conducting a mercantile business, could hold personal "store property" (purchased, in part, with proceeds from the sale of personal property jointly held by them, apparently in the entirety) as tenants by the entirety. Prefacing its conclusion with the observation that "estates in the entirety may exist in personal property growing out of real estate so owned," [17] the court went *further:*

> And no good reason is apparent why such an estate may not exist in *other* personal property. We think it can. Although there is some difference in

---

**17.**  For this proposition *George* cites *Citizens' Savings Bank & Trust Co. v. Jenkins,* 91 Vt. 13, 99 A. 250 (1916). *Citizens' Savings Bank & Trust Co.* stated that,

> estates by entirety may exist in personal property growing out of real estate as well as in real estate strictly, and the cutting of timber by mutual consent effected in equity only a transmutation of property from real to personal, but did not change the character of the estate in the timber cut.

99 A. at 253. The trustee quotes this passage in support of his argument that transmuta-

tion, or a "nexus" between the real property and personal property, is a requirement for holding personalty in the entirety and, therefore, McNeilly must trace the account balance to proceeds from the Rhode Island entirety real estate. Though the trustee attempts to gloss over it, it is manifest that in *George* the Vermont Supreme Court went beyond the holding of *Citizens' Savings Bank & Trust Co.,* and recognized that personal property could be held as a tenancy by the entirety even though the source of the personalty was not the proceeds of entirety real estate.

judicial opinion on the question in other jurisdictions, we think the better view is as here stated....

108 A. at 516 (emphasis added).

Later cases from the Vermont Supreme Court reaffirm *George's* determination. Addressing entireties interests in a horse, a number of heifers, and additional undescribed personal property, *Swanton Savings Bank & Trust Co. v. Tremblay* reiterated the conclusion that just as "[a] husband and wife may hold estates in entirety in personal property growing out of real estate so owned by them[,] [t]hey may also hold such an estate in other personal property." 113 Vt. 530, 37 A.2d 381, 383 (1944) (citation omitted). *Accord Beacon Milling Co., Inc. v. Larose,* 138 Vt. 457, 418 A.2d 32, 33 (1980) ("It is well established that spouses can hold personal property as tenants by the entirety."); *Corey v. McLean,* 100 Vt. 90, 135 A. 10, 10 (1926)(the fact that the wife's earnings constituted part of the purchase money used to buy machinery and livestock did not defeat the claim to an entirety interest in the personal property).

Federal courts applying Vermont law in § 552(b)(2)(B) disputes have followed the clearly visible guide posts erected by Vermont's courts. *See General Motors Acceptance Corp. v. Lefevre,* 38 B.R. 980, 982–83 & n. 1 (D.Vt.1983)(suggesting that establishing one spouse's intent to make a gift of non-joint personal property to the other spouse would be enough to create a tenancy by the entirety ownership interest therein); *see also D'Avignon & Sons Trucking v. Palmisano (In re D'Avignon),* 34 B.R. 796, 798 (D.Vt.1982) (recognizing the scope of *George,* concluding that personal property can be held in the entirety in Vermont).

■ In light of the Vermont authorities, the trustee's argument that McNeil-

ly's claim must fail because the funds at issue were impermissibly commingled and untraced (or untraceable) is to no avail.

■ Finally, we observe that Vermont tenancy by the entirety property interests are "exempt from process" by the creditor of one of the tenants. *See, e.g., Lowell v. Lowell,* 138 Vt. 514, 419 A.2d 321, 322 (1980)(real and personal property held as a tenant in the entirety "could not be reached by legal process, absent fraud"); *accord Beacon Milling Co., Inc.,* 418 A.2d at 34. This is so within the meaning of § 522(b)(2)(B). *See In re Cerreta,* 116 B.R. at 405 (trustee can reach an entirety property interest only to the extent that a creditor could and under Vermont law entirety property not subject to joint claims is "immune from process"); *accord In re D'Avignon,* 34 B.R. at 798. *See also Napotnik,* 679 F.2d at 318–19 ("'exempt from process'" does not mean only those exemptions available under state law via § 522(b)(2)(A), but must be read to mean "'immune from process'" or not reachable by creditors); *cf. In re Cerreta,* 116 B.R. at 405 n. 7 (it was in-artful of Congress to mix up the terms "'exempt'" and "'immune,'" in 522(b)(2); and, overall, a better course would be for such joint property to be excepted from the estate under § 541).

The clear complexion of Vermont law reveals we cannot affirm the bankruptcy court's ruling. With respect to the requisites for creating an entirety interest *under Vermont law,* the trustee proffered no evidence to undermine McNeilly's claim and has demonstrated no legitimate legal flaw in it.[18]

### Conclusion

Misapprehending governing Vermont law precepts, the trustee failed to demonstrate that McNeilly did not have a tenant by the entirety interest in the Vermont account, "exempt from process under ap-

**18.** Our inquiry has led us to authorities suggesting a multi-factor delimiting test for bank account entireties interests in Vermont, *see Beacon Milling Co., Inc.,* 418 A.2d at 34 ("determination ... could depend on many factors, including the circumstances surrounding

the creation of the account, the intention of the depositor or depositors, and the source of the funds"); *see also General Motors Acceptance Corp.,* 38 B.R. at 982 n. 1 (citing the *Beacon Milling Co., Inc.* factors). The record here is far too spare to permit a principled

plicable nonbankruptcy law," immediately prior to filing his petition.[19]

For these reasons, the order sustaining the trustee's objection to the debtor's exemption claim is REVERSED.

application of the pertinent factors. *See General Motors Acceptance Corp.,* 38 B.R. at 982 n. 1 ("We conclude that whether [a tenant by the entirety interest] exists is a factual issue which turns on circumstances and the intent of the parties.").

In passing we also crossed cases describing the common law origins and operation of Vermont's tenancies by the entireties ownership that may be relevant to a properly challenged exemption claim in Vermont entireties interests. *See, e.g., In re Cerreta,* 116 B.R. at 405 & n. 5.

**19.** Since the points were not pursued below, we express no opinion whether McNeilly's admittedly premeditated, pre-bankruptcy shifting of assets to the Vermont account could be vulnerable as a fraudulent transfer, *see, e.g., In re Hendricks,* 237 B.R. 821, 826 (Bankr.M.D.Fla.1999) (refusing to deny the debtor's § 522(b)(2)(B) exemption on the basis of the alleged transfer of non-exempt assets into exempt entireties assets, but observing that the trustee and creditors had recourse to the § 548 avoidance powers); *Lowell,* 419 A.2d at 322 (suggesting that property held as a tenant in the entirety might be reachable under state law if fraud could be proved); *Becker v. Becker,* 138 Vt. 372, 416 A.2d 156, 159–62 (1980) (describing and applying the elements of a state fraudulent transfer action in a challenge to a transfer of interest to a tenancy by the entirety form of ownership), whether the assets may be reachable via another avenue, *see In re D'Avignon,* 34 B.R. at 800 (in circumstances where the debtor-spouse is attempting to shield assets via an entirety exemption, bankruptcy court could grant relief from stay for cause on a motion by a joint creditor of the debtor and non-debtor spouse), or whether such pre-bankruptcy maneuvers might support a complaint objecting to discharge or an action to dismiss the case, *see In re Hendricks,* 237 B.R. at 826. *But see In re Gutpelet,* 137 F.3d 748, 750–52 (3d Cir.1998)(concluding that the proven § 548(A)(2) avoidability of the transfer from a non-entirety to an entirety interest held with the non-debtor spouse was grounds for sustaining the trustee's objection to the claimed § 522(b)(2)(B) exemption).