**In re Gregory W. KOSS, Debtor.**

No. 02–13666.

United States Bankruptcy Court,
D. Massachusetts.

Jan. 21, 2005.

Arthur J. Santos, Jr., Lowell, MA, Carl D. Aframe, Aframe, Barnhill & von Timroth, PA, Worcester, MA, for Debtors.

Christopher Lee, Law Offices of Christopher Lee, Hopkinton, MA, for Trustee.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is an "Objection by the Chapter 7 Trustee to the Debtor's Claims of Real and Personal Property Exemptions, Or in the Alternative, Surcharging the Debtor's Real and Personal Property Exemptions" (the "Objection to Exemptions"), filed by Donald Lassman (the "Chapter 7 Trustee").

### I.  *Facts*

Gregory W. Koss (the "Debtor") filed a Chapter 11 petition in this district on May 20, 2002.[1]  In or about February of 2003,

---

1.  The case was originally assigned to Judge Carol J. Kenner in the Eastern Division of the District of Massachusetts.  The case was later

during the pendency of the Chapter 11 case and while the Debtor remained a debtor in possession, a fire substantially destroyed the residence owned by him and his non-debtor spouse and all of the personal property located therein. The Debtor did not timely advise the Court or the United States trustee (the "UST") of the loss, nor did he advise the Court or the UST that he and his spouse were filing an insurance claim with respect thereto.

In the Debtor's bankruptcy schedules, the residence had been listed with a fair market value of $1,000,000.00 and the personal property was listed with a fair market value of $20,400.00. Yet, the Debtor and his wife submitted sworn statements of loss with their insurer claiming that their residence and personal property had substantially greater values. Based on that claim, the insurer remitted payment on the loss directly to the Debtor and his spouse in the approximate amount of $1,300,000.00.[2] At no time, however, did the Debtor deposit the insurance proceeds into the Chapter 11 debtor in possession bank account, report these insurance proceeds to the Court, or include the insurance proceeds in his reports to the UST.

In October of 2003, seventeen months into the case, a feasible plan had still not been proposed or confirmed. The Debtor moved for, and was granted, a conversion of the case to one under Chapter 7.

Upon his appointment, the Chapter 7 Trustee learned of the aforesaid disbursements of insurance proceeds to the Debtor and his spouse, and filed two adversary proceedings in response. The first seeks a determination that the insurance proceeds are property of the estate and an order for the Debtor to turn the proceeds over to the Chapter 7 Trustee. The second adversary proceeding seeks an order for the Debtor to turn over the excess of the amount received from the insurance company for personal property, approximately $440,000.00, over the amount scheduled and exempted for the same personal property, and, further, denial of the Debtor's discharge.

The Chapter 7 Trustee has filed the instant motion to disallow or surcharge the Debtor's exemptions in order to properly ensure a recovery for any judgment the Chapter 7 Trustee may ultimately receive in one, or both, of the adversary proceedings. There are no other known assets from which the Chapter 7 Trustee may recover. The Debtor opposes the Chapter 7 Trustee's Objection to Exemptions on two grounds. First, the Debtor argues that the Objection to Exemptions should be overruled as untimely. Second, the Debtor contends that, even if the Objection to Exemptions was timely filed, it should be overruled, *inter alia*, because 11 U.S.C. § 522(c) precludes any recovery by the Chapter 7 Trustee from exempt assets. After a hearing, the Court took these two preliminary issues under advisement.

II. *Timeliness of Objection*

▪ The Debtor first maintains that the Objection to Exemptions should be overruled because the time for filing such an objection has expired. Federal Rule of Bankruptcy Procedure 4003(b) provides that a party in interest may object to a debtor's exemptions within 30 days of the meeting of creditors mandated by 11 U.S.C. § 341. The Debtor says that the clock began to run after the § 341 meeting in the *original* Chapter 11 case, and did

transferred to this Court upon Judge Kenner's retirement.

**2.** The Chapter 7 Trustee was ultimately able to intercept approximately $240,000.00 in additional funds from the insurer.

not start anew from the postconversion § 341 meeting in the Chapter 7 case.

The Debtor describes his argument—that the 30–day period does not recommence upon conversion—as the "majority rule." This Court counts differently. There are, in fact, cases in support of the Debtor's argument. *See e.g., In re Bell,* 225 F.3d 203 (2nd Cir.2000); *In re Smith,* 235 F.3d 472 (9th Cir.2000).[3] But there are also numerous cases which hold that a new period within which to object to exemptions begins with the new § 341 meeting after conversion to a new chapter of the Bankruptcy Code. *See e.g., In re Campbell,* 313 B.R. 313 (10th Cir. BAP 2004); *In re Hopkins,* 317 B.R. 726 (Bankr.E.D.Mich.2004); *In re Lang,* 276 B.R. 716 (Bankr.S.D.Fla.2002); *In re Wolf,* 244 B.R. 754 (Bankr.E.D.Mich.2000). Because all of the foregoing decisions have been reached outside of the First Circuit, the Court regards the issue as a matter of first impression.

The time for filing objections to exemptions is established by Federal Rule of Bankruptcy Procedure 4003(b). It provides:

> A party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.

Upon the conversion of a bankruptcy case to one under another chapter of the Bankruptcy Code, an order for relief under the new chapter is constructively created.[4] Thereafter, a new § 341 meeting must be called and held. *See* Fed. R. Bankr.P.2003. Rule 4003 does not specify that the § 341 meeting which sets the 30–day deadline must be the *first* meeting under any chapter. Fed. R. Bankr.P. 4003(b); *In re Campbell,* 313 B.R. at 320. To so interpret Rule 4003 would be unnecessarily restrictive; "if the rules meant the initial meeting of creditors was the only time an objection could be made to exemptions, they would have been drafted consistently." *In re Campbell,* 313 B.R. at 320 (citing to *In re Bergen,* 163 B.R. 377, 379 (Bankr.M.D.Fla.1994)). Indeed, this Court can discern no reason to interpret Rule 4003 by adding language (i.e., that the referenced § 341 meeting is the first one regardless of Bankruptcy Code chapter) unless such an interpretation is obvious. Indeed, what is obvious it that the opposite must be true.

If the 30–day period to file objections does not recommence when a reorganization case converts to a liquidation case under Chapter 7, a newly-appointed trustee would rarely, if ever, have an opportunity to object to exemptions. *In re Hopkins,* 317 B.R. 726, 731–33; *In re Lang,* 276 B.R. at 721–22. Indeed, this case started in Chapter 11, with no creditors' committee and this Debtor as the only estate representative. Although any individual creditor and the UST had standing to object to the Debtor's claimed exemptions, no one was charged with the respon-

---

3. The Debtor also cites to *In re Taylor,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The *Taylor* Court held that objections to exemptions may not be filed beyond the deadline provided by Rule 4003(b). *Id. Taylor,* however, did not involve a converted bankruptcy case, and is inapposite to the issue now before the Court.

4. The effect of conversion is described in 11 U.S.C. § 348(a), *inter alia:*

> Conversion of a case from one chapter of this title to a case under another chapter of this title constitutes an order of relief under the chapter to which the case is converted, but [ . . .] does not effect a change in the date of filing of the petition, commencement of the case, or the order of relief.

sibility to do so in the fashion contemplated in 11 U.S.C. § 704. To suggest that, in such a circumstance, the deadline within which to object to a debtor's exemptions expires on the debtor's watch invites abuse. This Court finds the decisions which have not ascribed to the Supreme Court and Congress such an impractical intention to be better reasoned.

■ In the alternative, the Debtor argues that the time within which the Chapter 7 Trustee could object to his exemptions expired because the Chapter 7 Trustee unreasonably held the Chapter 7 § 341 meeting open for a period of approximately seven months. The Court agrees that a trustee has a duty to convene a § 341 meeting within a reasonable time. 11 U.S.C. § 341(a) (2004). There is a difference, however, between *convening* and *concluding* a meeting; and it has not been argued that the date on which the Chapter 7 Trustee originally convened the meeting was unreasonably set. Still, this Court acknowledges that the § 341 meeting was held open an unusually long time.

The question of how long a § 341 meeting may reasonably be held open has arisen in this district before. In the case of *In re Levitt*, the trustee generally continued a meeting without specifying a date of adjournment or expressing to those in attendance that the meeting would be reconvened. 137 B.R. 881 (Bankr.D.Mass.1992). The court held that a trustee must announce a date to reconvene within a "reasonable time." *Id.; see also In re Friedlander*, 284 B.R. 525 (Bankr.D.Mass.2002). A reasonable time was deemed by the *Levitt* court to be within 30 days of the date on which the meeting of creditors was

last held. *Id.* In the case of *In re Flynn*, a distinctly different approach was taken. There, the court found that a § 341 meeting is not concluded until the trustee so declares *or the court so orders." In re Flynn*, 200 B.R. 481, 484 (Bankr.D.Mass. 1996) (citing to *In re DiGregorio*, 187 B.R. 273, 275 (Bankr.N.D.Ill.1995)) (emphasis added).

■ This Court agrees with and adopts the *Flynn* holding. Sometimes, continuation of a § 341 meeting is entirely appropriate. Where the circumstances provide justification (e.g., the financial affairs of a debtor are complex or a debtor is uncooperative), a trustee has no choice but to adjourn the meeting. In other circumstances, extended adjournment may be less, or not at all, justified. The *Flynn* interpretation of Rule 4003 better conforms to the language of Rule 4003 which contains no continuance limitations, and appears better suited to protect both the estate in difficult circumstances and the frustrated debtor who is free to request the Court's intervention.

If the Debtor here felt himself unduly, and unnecessarily, prejudiced by the continuation of his § 341 meeting, he was free to file a motion to compel the Chapter 7 Trustee to conclude the meeting. He did not do so. Federal Rule of Bankruptcy Procedure 2003 does not provide a *per se* deadline for conclusion of a § 341 meeting or a deadline for the reconvening of an adjourned § 341 meeting.[5] This Court does not believe that it be wise, or that the Court is authorized, to craft one.

### III. *Surcharge of Exemptions*

The Debtor further maintains that, even if the Trustee's Objection to Exemptions

---

5. Rule 2003(e) provides that, if a trustee announces the adjournment date and time at a meeting, the trustee need not send "further written notice" of the adjourned meeting.

That rule should not be understood to mean that, absent such an announcement, any other form of adjournment of a meeting not yet concluded is precluded.

was timely, it can not succeed on its merits because properly identified exemptions may not be disallowed or surcharged. The Debtor contends that, even if he is ultimately found to have converted assets of the estate,[6] any such claims must be treated as prepetition debt and, as such, the Chapter 7 Trustee, as most other prepetition creditors, is precluded from seeking recovery from exempt property.

The Debtor first reminds the Court that, in converted cases, postpetition pre-conversion claims are treated as debts that arose before the commencement of the case. 11 U.S.C. § 348(d) (2004).[7] The Debtor then cites to 11 U.S.C. § 522(c), which provides:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case [ . . . ]

The Debtor has indeed demonstrated that, at the time of case commencement, he held an otherwise unassailable homestead exemption in the amount of $300,000.00 in his residence, pursuant to M.G.L. ch. 188, § 1. The Chapter 7 Trustee is not, however, challenging the original validity of the exemption; rather, he is seeking, pursuant to 11 U.S.C. § 105(a), to disallow or surcharge the exemption on the basis of allegedly bad acts by the Debtor. Hence, should the Chapter 7 Trustee succeed, § 522(c) would be inapplicable because the subject property would have lost its exempt status.

The Debtor argues that the use of § 105(a) to disallow or surcharge exemptions would be overreaching. But courts have disallowed a debtor's exemption on account of a debtor's postpetition bad acts. *See, e.g., In re Bogan,* 302 B.R. 524 (Bankr.W.D.Pa.2003) (holding that where the bad faith of a debtor is clearly demonstrated, "the allowance of any exemption in the known property of the estate would constitute a further abuse of the bankruptcy process"); *In re Stinson,* 221 B.R. 726 (Bankr.E.D.Mich.1998) (holding that a debtor's exemption of a personal injury claim should not be allowed where debtor actively sought to conceal the claim). And surcharge of a debtor's exemption has also been previously employed by courts to fashion equitable remedies in appropriate cases. *See, e.g., In re Karl,* 313 B.R. 827 (holding that a court may surcharge a debtor's exemptions "when a debtor's contemptuous conduct involves the suppression of estate property, or when the debtor fails to adequately explain its loss"); *In re Swanson,* 207 B.R. 76 (Bankr.D.N.J.1997) (holding that a trustee is "entitled to subtract the damages incurred because of [a] debtor's contempt from the exempt portion of the proceeds of the sale of [his] residence"). All of these cases have a common nexus: The debtors

---

**6.** It is instructive to note that the Debtor does not concede that the insurance proceeds were ever property of the estate. The Debtor has argued from the outset, with respect to an issue not yet ripe for determination, that, during the pendency of the Chapter 11 case, he paid for the insurance coverage with the proceeds of his postpetition wages and, accordingly, the insurance policy and the proceeds thereof belong to the Debtor and not the estate. See 11 U.S.C. § 541(a)(6).

**7.** 11 U.S.C. § 348(d) provides:

> (d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

engaged in wrongful conduct that detrimentally impacted the bankruptcy estate, all while seeking the benefits and protections of the Bankruptcy Code.

■ Any use of 105(a) to disallow or surcharge a debtor's exemptions should be made cautiously. For example, where a debtor intentionally conceals estate property, the most appropriate response may be to disallow a debtor's exemptions entirely. *See In re Bogan*, 302 B.R. 524; *In re Stinson*, 221 B.R. 726. And where a debtor has merely converted estate property, perhaps even in good faith, surcharge of the debtor's exemption (in effect, recharacterizing the property converted as an advance on the amount that can be exempted) may be the most suitable remedy in order to return the estate to the position it would have been in but for the debtor's actions. *In re Ballard*, 115 B.R. 190, 191 (Bankr.D.Minn.1990). Section 105(a) provides the flexibility to ensure that the remedy imposed by the court is appropriate to the circumstances.[8]

■ Here, the Chapter 7 Trustee alleges that the Debtor has, while acting as the estate representative, intentionally and in secret, converted significant estate assets postpetition, and urges this Court to disallow the Debtor's exemptions or, at a minimum, surcharge them in order to compensate for the creditors' magnified loss. The Debtor argues that § 522(c) precludes those remedies. The Debtor would ascribe to Congress the intention to permit debtors who have converted nonexempt assets to exempt the rest. Not likely. If the facts alleged by the Chapter 7 Trustee

are proven true, the Debtor may not employ § 522(c) as a shield.

IV. *Conclusion*

For all the foregoing reasons, the Court rules that the Chapter 7 Trustee's Objection to Exemptions is timely. The Court further rules that the relief sought therein is not precluded by § 522(c).

A separate order in conformity with this Memorandum of Decision shall enter herewith.

### *ORDER*

For the reasons set forth in this Court's Memorandum of Decision of even date, the Court rules that:

1. the "Objection by the Chapter 7 Trustee to the Debtor's Claims of Real and Personal Property Exemptions, Or in the Alternative, Surcharging the Debtor's Real and Personal Property Exemptions" (the "Objection") has been filed timely, pursuant to Federal Rule of Bankruptcy Procedure 4003(b); and

2. the relief sought in the Objection is not precluded by 11 U.S.C. § 522(c).

---

8. The possibility of surcharge provides an incentive for debtors to diligently follow the law. *In re Stinson*, 221 B.R. at 732. Moreover, surcharge provides this incentive without *punishing* debtors, it merely corrects their errors in order to preserve the distribution scheme of the Bankruptcy Code and the expectations of creditors. *In re Karl*, 313 B.R. at 831.