Gregory A. NEWMAN and Karen
L. Newman, Debtors.

Gregory A. Newman and Karen
L. Newman, Appellants,

v.

Anne J. White, Chapter 7
Trustee, Appellee.

BAP No. MS 09–053.
Bankruptcy No. 08–44005–HJB.

United States Bankruptcy
Appellate Panel
for the First Circuit.

April 26, 2010.

258

Robert F. Casey, Jr., Esq., on brief for Appellants.

Anne J. White, Esq., on brief for Appellee.

Before VOTOLATO, LAMOUTTE, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

KORNREICH, Bankruptcy Judge.

Gregory and Karen Newman are the debtors in this chapter 7 case. Anne J. White is their trustee. She examined the debtors on their doubtful homestead exemption claim at the initial § 341 meeting.[1] Seven months later, at a second meeting, the trustee re-examined the debtors on the same subject. Thereafter, the debtors filed a motion seeking a determination that the § 341 meeting had been concluded at the time of the initial examination. The trustee then filed her first and only objection to the debtors' homestead exemption. The overarching question before the bankruptcy court was whether or not the objection had been filed timely under Bankruptcy Rule 4003(b)(1).

Ruling that the § 341 meeting had never been concluded by the trustee, and, therefore, that the objection was timely, the bankruptcy court sustained the trustee's objection to the homestead exemption and denied, as moot, the debtors' motion to determine that the meeting had been concluded. The debtors have appealed the order sustaining the trustee's objection. We **REVERSE.**

### BACKGROUND [2]

The debtors' chapter 7 petition was filed on December 9, 2008, along with the required schedules. They listed their resi-

---

1. Unless expressly stated otherwise, all references to the "Bankruptcy Code" or to a specific statutory section shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.;* and all references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

2. Neither party sought an evidentiary hearing or raised an evidentiary objection in the bankruptcy court. Our understanding of the facts is derived from the appendices which include the motion papers and the transcript of the hearing before the bankruptcy court. *See Cabral v. Shamban (In re Cabral),* 285 B.R. 563, 577 (1st Cir. BAP 2002).

dence as being owned by them as tenants in the entirety and showed it as having a value of $325,000, and as being subject to a mortgage with a balance due of $469,861. They also disclosed that Gregory had declared this property to be his homestead under state law in 1997.[3]

The debtors listed a second residential property as being owned by them as tenants in common and as being occupied by Gregory's mother, the holder of a life estate. The mother's residence was shown as having a value of $318,500 and as being free of any secured claim. The debtors also disclosed that Gregory's mother had declared this property to be her homestead under state law in 2005. The central feature of this case is the debtors' listing of the mother's residence on their schedule of exempt property.

At the § 341 meeting, held on January 6, 2009, it became evident that the debtors planned to continue living in their own home. They had claimed the mother's residence as exempt under state law to prevent it from becoming an asset of the bankruptcy estate.[4] Confusion arose over the nature and extent of the debtors' interest in the mother's residence because of a suggestion that it was held in trust. This confusion, along with other concerns, caused the trustee to demand that the debtors produce title documents, proof of the homestead declarations and other information within ten days of the meeting.

The meeting ended without an announcement by the trustee that it had been concluded or adjourned.

Shortly after the § 341 meeting, the U.S. Trustee commenced an independent investigation to determine if there was cause to dismiss the case under § 707(b), or to object to the debtors' discharge under § 727.

The documents and other information demanded by the trustee were delivered to her within ten days of the meeting. This timely response allowed the trustee to determine promptly that the mother's residence was owned by Gregory and his two siblings, free of any trust, subject to their mother's life estate. At this time, the trustee also learned of the debtors' reliance upon *In re Vasques*, 337 B.R. 255 (Bankr.D.Mass.2006), as legal authority for their exemption claim.[5] After reviewing this state of affairs, the trustee made a proposal for settlement. Her offer was rebuffed.

Five months after the initial § 341 meeting, the U.S. Trustee informed the trustee that the investigation of the debtors had been concluded in their favor. This prompted the trustee to give notice on June 2, 2009, of a "Continuance of Meeting" to occur on July 20, 2009. The debtors allowed the second meeting to go forward as scheduled without seeking bankruptcy court protection. Little was accomplished at the second meeting be-

---

3. An estate of homestead may be acquired by deed or declaration under Massachusetts law. Such an estate creates an exemption under Mass. Gen. Laws ch. 188 §§ 1and 2.

4. An election of state exemption law by a Massachusetts debtor in a bankruptcy case is permissible under state law and under the Bankruptcy Code if certain domiciliary requirements are met. *See* 11 U.S.C. § 522(b). The debtors' election of state law is not at issue in this case.

5. In *Vasques*, the bankruptcy court overruled the trustee's objection to a homestead exemption under Massachusetts law on similar facts. 337 B.R. at 258. Like the debtors in this case, the debtor in *Vasques* was a co-owner and an adult child of the homestead declarant. However, unlike the current situation, the property claimed as exempt in *Vasques* was the debtor's actual residence and the debtor had made no declaration of homestead with respect to any other property.

yond the re-examination of the debtors about their homestead exemption claim.

The debtors filed their "Motion to Compel Trustee to File Notice That the Section 341 Examination of Debtors Took Place on January 6, 2009" (the "motion to compel") one week after the second examination. Through it, they sought a determination that the § 341 meeting had been held and concluded on January 6, 2009. They also alleged that the trustee's failure to conclude the meeting had prevented them from obtaining their discharge in a timely fashion.[6]

On August 18, 2009, twenty-nine days after the second examination, the trustee filed: (a) an electronic notice captioned "Meeting of Creditors Held and Examination of Debtor," bearing no indication of when the meeting had been held or whether or not it had been concluded; (b) her response to the debtors' motion to compel, acknowledging that the second interview plowed no new ground on the homestead exemption;[7] and (c) her first and only objection to the debtors' homestead exemption claim based upon facts she obtained at or immediately following the initial meeting. In their responsive papers, the debtors urged the bankruptcy court to view the second meeting as a pretext for the trustee's failure to file an objection within thirty days after the initial meeting. They also opposed the trustee's objection on the merits.

The bankruptcy court heard arguments and rendered its opinion from the bench. Dealing first with the timeliness question, and relying on *In re Koss,* 319 B.R. 317 (Bankr.D.Mass.2005), the bankruptcy court stated: "if the Trustee does not say the words that 'the meeting is concluded,' then the meeting is not concluded and any debtor who finds him or herself prejudiced by that can file a motion asking the Court to order the trustee to conclude it so the debtors are not abused . . . ." Because the trustee had never concluded the § 341 meeting, the bankruptcy court determined that her objection had been filed timely. The bankruptcy court then addressed the merits of the homestead exemption claim and ruled that Gregory was estopped under state law from claiming a homestead exemption in his mother's residence. The bankruptcy court also deemed the debtors' motion to compel to be moot because "[i]t doesn't matter when [the § 341 meeting] took place. It only matters whether it ended, and it didn't."

The bankruptcy court entered orders sustaining the trustee's objection and denying the debtors' motion to compel. The debtors appealed from the order sustaining the trustee's objection.

## JURISDICTION

■ We have jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing*

---

6. The debtors have offered no reason why the trustee's failure to conclude the § 341 meeting on January 6, 2009, had prevented the timely entry of an order of discharge.

7. At paragraph 12 of her response, the trustee stated:

At the Debtors' continued Section 341 meeting on July 20, 2009, the Trustee asked questions designed to illicit (*sic*) testimony regarding the Debtors' intentions with re-

spect to their home located at 68 Still River Road, Harvard, Massachusetts (the "68 Still River Home"). The Debtors indicated that they live at 68 Still River Road and that they plan to remain and retain the property. The Trustee also asked questions regarding 31 Still River Road, Harvard, Massachusetts, a second property that the Debtors sought to exempt (the "31 Still River Home").

*Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir. 1985)). The order sustaining the trustee's objection to the debtors' homestead exemption claim is a final, appealable order. *See Khan v. Bankowski (In re Khan)*, 375 B.R. 5, 8 (1st Cir. BAP 2007); *Hildebrandt v. Collins (In re Hildebrandt)*, 320 B.R. 40, 43 (1st Cir. BAP 2005) (citing *Fiffy v. Nickless (In re Fiffy)*, 293 B.R. 550, 553 (1st Cir. BAP 2003); *McNeilly v. Geremia (In re McNeilly)*, 249 B.R. 576, 579 (1st Cir. BAP 2000)).

### STANDARD OF REVIEW

 Findings of fact are reviewed for clear error, and conclusions of law are given *de novo* review. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995). When the resolution of the merits of an exemption claim rests on undisputed facts, as it does in this case, the

ruling on appeal is reviewed *de novo. See Khan*, 375 B.R. at 8; *Hildebrandt*, 320 B.R. at 43; *McNeilly*, 249 B.R. at 579. However, first we must address the bankruptcy court's preliminary ruling on the timeliness of the trustee's objection under Bankruptcy Rule 4003(b)(1). We will apply *de novo* review to this ruling as well, because it was grounded on the bankruptcy court's application of a questionable legal standard to the undisputed facts of this case.

### DISCUSSION

 The issues on appeal are: (1) whether the trustee was procedurally time-barred under Bankruptcy Rule 4003(b)(1) from objecting to the debtors' homestead exemption; and, if not, (2) whether Gregory was entitled to exempt his mother's residence from the bankruptcy estate under state law based upon her declaration of homestead.

The commencement of a bankruptcy case creates an estate comprised of the debtor's property. *See* 11 U.S.C. § 541. Section 522(b) permits an individual debtor to exempt certain property from the estate. To protect his or her property in this way, § 522(*l*)[8] and Bankruptcy Rule 4003(a)[9] require that a debtor file a list of property claimed as exempt. Under § 522(*l*) and Bankruptcy Rule 4003(b)(1),[10]

---

**8.** Section 522(*l*) provides:

> The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

**9.** Bankruptcy Rule 4003(a) provides:

> A debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007. If the debtor fails to claim

exemptions or file the schedule within the time specified in Rule 1007, a dependent of the debtor may file the list within 30 days thereafter.

**10.** Bankruptcy Rule 4003(b)(1) provides:

> Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections

property appearing on that list will be excluded from the estate unless a party in interest objects within thirty days of the conclusion of the meeting of creditors (the " § 341 meeting") convened under § 341(a). *See Taylor v. Freeland & Kronz,* 503 U.S. 638, 643, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). This objection period may be enlarged;[11] however, in the absence of a timely objection, an exemption will be allowed "whether or not [the debtor] had a statutory basis for claiming it." *Id.; see also Barroso–Herrans v. Lugo–Mender (In re Barroso–Herrans),* 524 F.3d 341, 344 (1st Cir.2008); *Premier Capital, Inc. v. DeCarolis (In re DeCarolis),* 259 B.R. 467, 470 (1st Cir. BAP 2001).

The presiding officer of the § 341 meeting in consumer cases is usually the case trustee, who will use the meeting to examine the debtor under oath about his or her assets and liabilities. The meeting may be concluded following a single session, or, under Bankruptcy Rule 2003(e), it "may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice." Bankruptcy Rule 2003(e) has been understood to permit a continuance *sine die. See In re Flynn,* 200 B.R. 481, 483 (Bankr. D.Mass.1996) ("The scant authority available agrees that "may" in Rule 2003(e) is permissive and not mandatory.").[12] However, there is no statutory provision or bankruptcy rule "specify[ing] the manner in which the meeting is to be 'concluded' " after it has been continued generally. *See Moyer v. Dutkiewicz (In re Dutkiewicz),* 408 B.R. 103, 105 (6th Cir. BAP 2009) (citing *In re Cherry,* 341 B.R. 581, 585 (Bankr. S.D.Tex.2006)). Moreover, no uniform rule of law on this point has appeared in the literature.

Three lines of approach have developed within this circuit and elsewhere. These have been referred to as the "bright-line" approach, the "case-by-case" approach, and the "debtor's burden" approach. Each is responsive to the demands of *Taylor* in its own way.

Under the "bright-line" approach, a meeting continued without a follow-up date will be deemed to have been concluded on the date of the initial meeting for the purpose of determining the beginning of the thirty-day objection period. *See Smith v. Kennedy (In re Smith),* 235 F.3d 472, 476 (9th Cir.2000); *In re Friedlander,* 284 B.R. 525, 527 (Bankr.D.Mass.2002); *In re Levitt,* 137 B.R. 881, 883 (Bankr.D.Mass. 1992); *see also U.S. v. Cushing (In re Cushing),* 401 B.R. 528 (1st Cir. BAP 2009);[13] *McGowan v. Ries (In re McGow-*

---

if, before the time to object expires, a party in interest files a request for an extension.

**11.** Bankruptcy Rule 9006(b)(3) permits the bankruptcy court to enlarge the time for filing an objection under Bankruptcy Rule 4003(b)(1) if the request is made before the expiration of the objection period. Bankruptcy Rule 4003(b)(2) allows the trustee to file an objection to a fraudulently asserted claim of exemption within one year after the closing of the case.

**12.** As an aside, if the proposed amendment to Bankruptcy Rule 2003(e) becomes effective, the presiding official at the § 341 meeting shall be required to file a statement after the meeting adjourns indicating when the next meeting will be held.

**13.** In *Cushing,* the U.S. Bankruptcy Appellate Panel for the First Circuit examined the meaning of the phrase "the trustee may hold open [the § 341] meeting," as it is set forth in § 1308(b)(1), to determine the time within which a debtor may file tax returns. In so doing, it explored the various approaches taken to determine when a meeting has been concluded under Bankruptcy Rule 4003(b)(1). It favored the "bright-line" approach because, "[i]f the trustee opts to hold open the § 341 meeting of creditors pursuant to § 1308, a clear statement must be made for the record." *In re Cushing,* 401 B.R. at 538.

*an)*, 226 B.R. 13 (8th Cir. BAP 1998) (discussing the implementation of the "bright-line" approach by local rule). The Ninth Circuit explained the benefits of the "bright-line" approach as follows: "To authorize trustees to adjourn meetings indefinitely, even when it is unlikely that any subsequent meeting will in fact be called, would nullify the thirty-day requirement of [Bankruptcy] Rule 4003(b), rendering the holding in *Taylor* hollow, and undermining the concerns expressed by the Supreme Court about promptness and finality." *In re Smith*, 235 B.R. at 476. According to the U.S. Bankruptcy Appellate Panel for the Sixth Circuit, "[c]ourts favoring this approach note that a bright-line rule provides certainty to trustees as to what assets are to be administered, and allows debtors to move on with their fresh start by allowing exemptions to become final within a definite and relatively short time." *In re Dutkiewicz*, 408 B.R. at 107 (citing *In re Friedlander*, 284 B.R. at 527; *In re Levitt*, 137 B.R. at 883).

Under the "case-by-case" approach, the facts and circumstances will be examined to determine the conclusion date of the § 341 meeting. *See Petit v. Fessenden*, 182 B.R. 59, 63 (D.Me.1995), *aff'd on other grounds*, 80 F.3d 29 (1st Cir.1996). In affirming the bankruptcy court's rejection of the "bright-line" approach, the district court in *Petit* stated, "[t]his is not a case such as *Levitt*, where a trustee adjourns a meeting indefinitely and then does nothing in the case for over a year."[14] *Id.* In adopting this approach, the Fifth Circuit observed that courts "have considered at least four factors in determining the reasonableness of a trustee's delay in adjourning a meeting of creditors: (1) the length of the delay; (2) the complexity of the estate; (3) the cooperativeness of the debtor; and (4) the existence of any ambiguity regarding whether the trustee continued or concluded the meeting." *Peres v. Sherman (In re Peres)*, 530 F.3d 375, 378 (5th Cir.2008).

The "debtor's burden" approach—employed by the bankruptcy court in this case—arose after *Taylor* because it had become commonplace for trustees to announce general continuances so they would not run afoul of the thirty-day objection deadline. *See In re Flynn*, 200 B.R. at 483. Adherents reason that a § 341 meeting will not terminate until "the trustee so declares or the court so orders" because they oppose the adoption of a strict deadline "where none appears in either the statute or the rules." *Id.* at 484; *see also In re Koss*, 319 B.R. at 321. They also reject the uncertainty created under the case-by-case approach because "[a]n objector would never know whether the objection was barred as untimely until the court had investigated the circumstances of the case." *Id.* Certainty is obtained from either a clear statement of conclusion by the trustee or the issuance of an order to that effect issued upon the request of a debtor. Under this approach, the onus of concluding a meeting rests with the debtor because " 'the debtor has the greatest interest in concluding the meeting. . . .' " *In re Dutkiewicz*, 408 B.R. at 108 (citing *In re DiGregorio*, 187 B.R. 273, 276 (Bankr. N.D.Ill.1995)).

As noted by the *Dutkiewicz* panel in its recent rejection of the "debtor's burden" approach, it has been spurned by the only

---

**14.** *Petit* began as a chapter 11 case. The U.S. Trustee had convened the § 341 meeting and announced that the meeting was "continued without date" before the appointment of a chapter 11 trustee. Three months later, after an investigation, the chapter 11 trustee filed an objection to the debtor's exemptions. The bankruptcy court ruled that the objection was timely under the unique circumstances of that case.

two circuit courts to have addressed the issue:

> In *Smith*, the Ninth Circuit Court of Appeals rejected the approach as paying insufficient heed to the Supreme Court's interest in firm, explicit deadlines as expressed in *Taylor*, 503 U.S. at 644, 112 S.Ct. 1644, and the trustee's duty to keep the bankruptcy process moving. *See In re Smith*, 235 F.3d at 477 n. 4. The Fifth Circuit rejected the approach as "ignor[ing] the clearly-established policy of the Bankruptcy Code of encouraging promptness in the filing of objections to exemptions, because it would permit a trustee to continue a meeting of creditors indefinitely." *In re Peres*, 530 F.3d at 378.

*Id.* at 109–10.

■ We reject the "debtor's burden" approach for the reasons expressed above and because: (a) it shifts the burden of concluding the meeting from the convening officer to the debtor; (b) it requires the debtor to seek closure from the court on a motion to compel conclusion for cause— namely, "abuse" at the hands of the trustee, as stated by the bankruptcy court in this case; (c) it allows a trustee to enjoy an unlimited enlargement of the thirty-day objection period without ever seeking one from the court; (d) it fosters the delivery of evasive and confusing notices like the one filed by the trustee in this case after her second examination of the debtors (i.e. "Meeting of Creditors Held and Examination of Debtor"); and (e) its application may be grounded, as it was in this case, upon a presumption that the § 341 meeting remained open as a matter of law, without any actual notice of a general continuance.[15] Therefore, we have no cause

to measure the trustee's conduct under the "debtor's burden" approach.

That said, we see no need to adopt or reject either the "bright-line" approach or the "case-by-case" approach in rendering our decision in this case. Each is a useful guide for determining the outcome when a trustee has failed to state unequivocally whether a § 341 meeting has been concluded or adjourned to a specific date and time. Moreover, these approaches may be applied jointly when the facts suggest the presence of special circumstances. In many cases, like the one before us, the same result will prevail under either approach.

The § 341 meeting in this case was convened on January 6, 2009. It ended on that day without an announcement of an adjournment of any kind. At the meeting, the trustee demanded that the debtors produce documents and other information within ten days. The debtors delivered the documents and other information to the trustee on or before January 16, 2009. By then, the trustee had become aware of the debtors' reliance upon *Vasques* as their legal authority for claiming the exemption. The trustee's immediate reaction to all of this was to make an offer of settlement. Her offer was rebuffed instantly.

Thus, the trustee's investigation of the doubtful homestead exemption claim was completed within ten days of the initial § 341 meeting. By then she knew: (a) the debtors' actual residence was of little or no value to the estate; (b) Gregory had declared a homestead in their actual residence where they planned to reside; (c) Gregory held a valuable one-third interest in his mother's residence subject to her life estate; (d) the debtors had relied upon *Vasques* as authority for protecting Grego-

---

15. The concern here is that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." *See* Fed.R.Evid. 301.

ry's economic interest in his mother's residence; and (e) the debtors were not interested in settling their exemption claim.

The trustee's first notice of an adjourned meeting was given after the trustee learned that the U.S. Trustee's investigation had been completed in the debtors' favor. We infer from the trustee's argument that she viewed that investigation to be a special circumstance justifying an open adjournment. We disagree for two reasons: First, because the trustee gave no appropriate notice of an adjournment to a point in time following the completion of U.S. Trustee's investigation; and second, because there was no apparent connection between that investigation and the second examination of the debtors.[16] As explained above, the trustee's investigation of the homestead exemption claim had been completed well within thirty days of her initial examination of the debtors. By her own account, the second meeting was little more than a rehash of the first.

The § 341 meeting in this case was concluded on January 6, 2009. In reaching this decision, we are mindful of the trustee's demand for documents, but such a demand, without something more, is not notice of an adjournment to a specific date and time. Therefore, the trustee's objection was late under Bankruptcy Rule 4003(b)(1) and she is precluded from challenging the validity of the doubtful homestead exemption claimed by the debtors. Though this outcome may be unfortunate, it is within the bounds of *Taylor.*

■ The responsibility for concluding or adjourning a § 341 meeting lies with the trustee. This result could have been avoided if the trustee in this case had heeded the policy of the Executive Office of the United States Trustee as expressed in its "Handbook for Chapter 7 Trustees," which states:

> The trustee should not routinely continue § 341(a) meetings when the debtor appears. If a trustee must continue the meeting, however, the trustee must, if at all possible, announce the continued date to all parties present at the initial meeting, and advise the United States Trustee and, if necessary, the clerk of the bankruptcy court, of the continued date.[17]

### CONCLUSION

The bankruptcy court's reliance upon the "debtor's burden" approach was an error of law. Therefore, we **REVERSE.**

VOTOLATO, Bankruptcy Judge,
Dissenting.

I write separately to voice disagreement with the Majority decision to reverse.

I do not take issue with the Majority's general discussion of the various decisions in this Circuit addressing the issues of when, and under what circumstances is the § 341 meeting closed, i.e., when does the clock begin to run vis-a-vis *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). However, I believe the answers to these questions are generally fact based, and that is where I respectfully part company with the Majority's *de novo* review of, and its ruling that

---

16. The U.S. Trustee's investigation could have resulted in the dismissal of the case. For that reason, it might have provided grounds for an enlargement of the time for filing an objection to the exemption or the basis for a request to stay proceedings on such an objection.

17. We have accorded no deference to this policy in our decision. We mention it because it may be of interest to trustees in the conduct of their affairs. The Handbook itself is not part of the record. The language quoted above came to our attention because it was quoted in the record below.

this is not a "special circumstances" case. I understand the Majority's evaluation of the trustee's conduct to be that she acted, at best *negligently*, and possibly *unprofessionally*, in the performance of her duties. That harsh determination,[18] I think, is unsupported by the record,[19] and forms a problematic basis for the conclusion that the bankruptcy judge made an *error of law* when he sustained the trustee's objection to the debtors' claim of exemption. As I see it, in these circumstances, where there is at least a mixed question of law and fact, a reviewing court must be able to find that the trial judge either abused its discretion, or that the reviewing court was left "with the definite and firm conviction that a mistake has been committed." *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 571 (1st Cir. BAP 2002). In my opinion the bankruptcy judge did neither, and the judgment appealed from should be affirmed. Based on the foregoing, I suppose that by implication it is fair to say that I favor the case-by-case approach to determine when the § 341 meeting is closed. *See Petit v. Fessenden*, 182 B.R. 59 (D.Me. 1995), *aff'd on other grounds*, 80 F.3d 29 (1st Cir.1996).

For the reasons discussed above, I would affirm the bankruptcy court's order.

---

**18.** While my position in this dissent should not be construed as endorsement of her conduct, I simply do not feel that to grade the trustee's performance is our call to make, on appeal, as a matter of law.

**19.** Especially where the U.S. Trustee was actively investigating for five months a possible § 727 objection to discharge, which was eventually abandoned.