**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1385

In re:  MATTHEW ALAN JENKINS,

                Debtor.

------------------------------------------------

MATTHEW ALAN JENKINS, formerly doing business as Shephard
Service Company,

                Plaintiff - Appellant,

        v.

LINDA WRIGHT SIMPSON,

                Appellee,

JAMES T. WARD, SR.,

                Trustee - Appellee.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Robert J. Conrad,
Jr., District Judge.  (3:13-cv-00192-RJC)

Argued:  March 24, 2015                 Decided:  April 27, 2015

Before MOTZ, KEENAN, and THACKER, Circuit Judges.

Reversed and remanded by published opinion.  Judge Motz wrote
the opinion, in which Judge Keenan and Judge Thacker joined.

Beth Richardson, SOWELL, GRAY, STEPP, & LAFFITTE, LLC, Columbia, South Carolina, for Appellant. Linda Wright Simpson, UNITED STATES BANKRUPTCY COURT, Charlotte, North Carolina; A. Cotten Wright, GRIER FURR & CRISP, PA, Charlotte, North Carolina, for Appellees.

———————

DIANA GRIBBON MOTZ, Circuit Judge:

After Matthew Alan Jenkins filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, the Trustee and the Bankruptcy Administrator (collectively, "the Trustee") filed a complaint objecting to Jenkins's discharge and then moved for summary judgment. The bankruptcy court granted the motion and entered an order denying the discharge. The district court affirmed. Jenkins appeals, arguing that the Trustee's complaint should have been dismissed as untimely. For the reasons that follow, we agree and so reverse and remand for further proceedings consistent with this opinion.

I.

On April 11, 2012, acting pro se, Jenkins filed a petition for Chapter 7 bankruptcy relief. In his Statement of Financial Affairs, filed with the bankruptcy court on April 24, Jenkins disclosed receipt of more than $235,000 in lawsuit proceeds in the two years preceding the filing of his petition, but offered no information as to the current status of those funds. On May 14, the Trustee convened a meeting of the creditors at which Jenkins testified that the proceeds from the lawsuits had been deposited into his wife's bank account, an account to which he admitted he had access, but of which he claimed not to be an owner.

Citing Jenkins's failure to provide necessary information, as well as his general lack of cooperation, counsel for the Trustee requested an extension of the deadline to file a complaint objecting to Jenkins's discharge. The Bankruptcy Code permits a trustee to file such a complaint, 11 U.S.C. § 727(c)(1), but absent judicial permission, the Bankruptcy Rules require that it be filed within 60 days after the first date set for the creditors' meeting. Fed. R. Bankr. P. 4004(a). The bankruptcy court here granted the Trustee's request and extended the deadline to "sixty days beyond . . . whenever the 341 [creditors'] meeting is concluded." J.A. 91.[1]

The creditors' meeting was then scheduled to reconvene on July 11. Jenkins, however, neither responded to the Trustee's emails regarding the continuation date, nor attended the July 11 meeting. As a result, the bankruptcy court found Jenkins in contempt. At the rescheduled creditors' meeting on July 19, Jenkins appeared by telephone and thus purged the contempt. But

---

[1] References to J.A. refer to the Joint Appendix filed by the parties in this appeal. The bankruptcy court followed its oral grant of the motion with a text order that reiterated the deadline had been extended, but set the new date at "sixty (60) days after the meeting of creditors pursuant to 11 U.S.C. § 341 has been adjourned," rather than concluded. J.A. 117 (emphasis added). However, the parties agree that the bankruptcy court erred in using the word "adjourned," and that the court intended the deadline to be sixty days beyond the meeting's conclusion, in accordance with the court's oral announcement. See Appellant's Br. 3 n.1; Appellee's Br. 14 n.16; Reply Br. 8 n.6.

4

he had still failed to provide the Trustee with some necessary information by that date, and so, before ending the telephonic meeting, counsel for the Trustee announced that she was "not going to conclude the meeting today." J.A. 471. Counsel explained, "I am going to talk with the trustee and, if he determines that we can adjourn the meeting, we will file a notice of that, but officially the meeting is continued." J.A. 471. No notice of a continued meeting was ever filed, nor did the meeting ever reconvene.

On September 26, 2012, sixty-nine days after the July 19 creditors' meeting, the Trustee filed a complaint, objecting to Jenkins's discharge in bankruptcy. Jenkins responded, asserting that the Trustee's complaint was "barred by the applicable statute of limitations." J.A. 161. The Trustee moved for summary judgment, which the bankruptcy court granted. The court found the Trustee's complaint timely and denied Jenkins a discharge.

Jenkins appealed to the district court, contending there, as he does before us, that the bankruptcy court erred in finding the Trustee's complaint timely filed. The district court disagreed and affirmed the judgment of the bankruptcy court. Jenkins timely noted this appeal, and we have jurisdiction pursuant to 28 U.S.C. § 158(d)(1). When considering "an appeal from a bankruptcy proceeding, we apply the same standard of

5

review that the district court applied when it reviewed the bankruptcy court's decision." In re Nieves, 648 F.3d 232, 237 (4th Cir. 2011) (per curiam). Thus, "[t]he legal conclusions of both the district court and the bankruptcy court are reviewed de novo and the factual findings of the bankruptcy court are reviewed for clear error." Id.[2]

II.

The Bankruptcy Code provides that a bankruptcy court "shall grant [a qualifying] debtor a discharge" of his debts, thereby extinguishing creditors' claims. 11 U.S.C. § 727(a) (emphasis added). By "free[ing] the debtor from all debts existing at the commencement of the bankruptcy proceedings" except those exempted by statute, Kontrick v. Ryan, 540 U.S. 443, 447 (2004), discharge provides the fresh start that is the hallmark of our bankruptcy system.

Not all debtors qualify for such relief, however. Indeed, the Code supplies "ample authority to deny the dishonest debtor a discharge." Law v. Siegel, 134 S. Ct. 1188, 1198 (2014) (citing 11 U.S.C. §§ 727(a)(2)-(6)). Thus, "[t]he trustee, a creditor, or the United States trustee may object to the

---

[2] Though Jenkins represented himself before both the bankruptcy court and the district court, we appointed counsel to represent him before this court, a duty his appointed counsel discharged ably.

6

granting of a discharge" by filing a complaint with the bankruptcy court. 11 U.S.C. § 727(c)(1); see also Fed. R. Bankr. P. 4004 (outlining procedure for objecting to discharge). Ordinarily, such a complaint must "be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Id. at 4004(a). But "the court may," as it did here, "for cause extend the time to object" on motion of "any party in interest." Id. at 4004(b).

The consequence of missing the deadline to object is severe. With respect to a Chapter 7 debtor, "on expiration of the time[] fixed for objecting to discharge . . . the court shall forthwith grant the discharge," subject only to limited exceptions not applicable here. Id. at 4004(c)(1). Accordingly, because Jenkins challenges the denial of his discharge on timeliness grounds only, a great deal hinges on the resolution of that issue.[3] We must decide whether the Trustee filed a timely objection; in doing so, we necessarily determine

---

[3] The Trustee's contention that Jenkins waived his timeliness argument by failing to raise it before the bankruptcy court is meritless. In Jenkins's response to the Trustee's complaint, he averred that the complaint was "barred by the applicable statute of limitations." J.A. 161. Proceeding pro se, Jenkins was entitled to a liberal construction of his pleadings. See Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). Under such a construction, Jenkins certainly preserved the timeliness defense he now advances.

whether the claims of Jenkins's creditors survive or are extinguished.

But first, because the bankruptcy court established a deadline of sixty days beyond the <u>conclusion</u> of the creditors' meeting, we must determine when the creditors' meeting concluded. Unfortunately, neither the Bankruptcy Code nor the Bankruptcy Rules expressly address this question. The Code, 11 U.S.C. § 341, mandates a creditors' meeting and directs both its content and its attendees. And Rule 2003 supplies the procedures by which such a meeting must progress. But neither instructs a trustee as to how to conclude a meeting, nor points to any circumstances under which a meeting must be deemed concluded. The parties offer competing contentions as to these questions -- and thus as to the date when the sixty-day clock began to run in this case.

On the one hand, the Trustee argues that "[t]he key date" is not the date of the meeting's conclusion at all, but rather "the date that all parties to whom the Extension Order applied received <u>notice</u> that the creditors' meeting had concluded." Appellee's Br. 18 (emphasis added). "Only then," he argues, "would the clock start ticking on the 60-day extended deadline for discharge complaints." <u>Id.</u> The Trustee waffles in pinpointing this date, suggesting it might be either August 7, 2012, when the bankruptcy court entered a text order indicating

8

Jenkins had purged his contempt charge, or May 9, 2013, when the Trustee himself filed a Notice of Conclusion. Id. at 19-20. Either way, the Trustee maintains, he filed a complaint prior to expiration of the 60-day period.

On the other hand, Jenkins maintains that the creditors' meeting concluded on July 19, 2012, when the Trustee failed to adjourn the meeting to a stated later date and time. Appellant's Br. 18. He contends that a meeting not properly adjourned to a stated date and time, as specified in Rule 2003(e), must "[l]ogically" be concluded. Id. Accordingly, Jenkins argues, the Trustee's complaint should have been dismissed as untimely.

III.

We agree with Jenkins and hold that the creditors' meeting concluded on July 19, 2012, and thus that the Trustee's objection to discharge was not timely.

We recognize of course that the Trustee did not intend to conclude the meeting on July 19. To be sure, the Trustee's counsel could not have been more clear on that point. See J.A. 471 ("I am not going to conclude the meeting today. . . . [O]fficially the meeting is continued."). Moreover, the Trustee was entitled to adjourn the meeting to a later date and time. See Fed. R. Bankr. P. 2003(e) (providing that a creditors'

9

meeting may be "adjourned," meaning continued). But the Bankruptcy Rules supply clear procedures on how to do so, none of which were followed here.

Rule 2003(e) provides, in its entirety: "The meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time. The presiding official shall promptly file a statement specifying the date and time to which the meeting is adjourned." The presiding official in this case neither announced an adjourned date and time, nor filed a statement specifying as much. And the Trustee never sought to rectify this omission and never attempted to reconvene the creditors' meeting after July 19. The meeting therefore concluded on that date.

Arguing to the contrary, the Trustee asks us to consider only whether "the trustee's actions in continuing [the] creditors' meeting [were] reasonable and necessary to timely move [the] case forward." Appellee's Br. 34-35. Under such an approach, the Trustee would have us weigh several factors to determine if his "delay in concluding the meeting of the creditors" was justifiable. Id. at 34 (emphasis added). But this formulation fatally relies on the validity of its own premise -- i.e., that the meeting's conclusion was somehow delayed beyond July 19, 2012. Accepting this formulation would require us first to accept that the meeting was successfully

10

continued on that date rather than concluded. Thus, we cannot even apply the Trustee's proposed inquiry unless we agree that a creditors' meeting may be continued or adjourned sine die, "[w]ith no day being assigned . . . for resumption of a meeting." See Black's Law Dictionary (10th ed. 2014). Neither the text of Rule 2003 nor the relevant case law supports such a conclusion.

The history of the Rule offers some critical guidance. Prior to 2011, Rule 2003(e) provided only that "[t]he meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice." Fed. R. Bankr. P. 2003(e) (2010) (emphasis added). But the Rule was amended in 2011 to eliminate the phrase "without further written notice," and to add the requirement that "[t]he presiding official shall promptly file a statement specifying the date and time to which the meeting is adjourned." Fed. R. Bankr. P. 2003(e) (current version).

The Rule now speaks in terms that are plainly mandatory -- "the presiding official shall promptly file a statement." Id. (emphasis added). This language prohibits the practice of adjournment sine die. As one leading treatise has noted, the provision added by the 2011 amendment "is designed to prevent indefinite adjournment." 9 Collier on Bankruptcy ¶ 2003.05 n.3 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014); see

11

also id. ¶ 2003.05 ("The trustee may not indefinitely continue a meeting of creditors."). To follow the Trustee's approach would require us to ignore this prohibition and hold that the Trustee could do precisely what the Rule seeks to prevent.

Nor, contrary to the Trustee's contention, does precedent compel his conclusion. In fact, except in the case at hand, it appears that no court has both ordered that the deadline for a creditor's objection to discharge run from the conclusion of the creditors' meeting and then considered whether a complaint met that deadline.

That being said, we are not entirely without guidance from case law. Just as the Bankruptcy Rules limit the time in which objections to discharge may be filed, so too do they limit the time in which a "party in interest" may object to the "list of property that the debtor claims as exempt" under 11 U.S.C. § 522(l). But unlike objections to discharge, for which the limitations period ordinarily runs from the beginning of the meeting, objections to exemptions must be filed "within 30 days after the meeting of creditors . . . is concluded." Fed. R. Bankr. P. 4003(b)(1) (emphasis added). Thus, because the Bankruptcy Judge in this case extended the filing of objections to discharge to 60 days after the creditors' meeting was concluded, the conclusion of the creditors' meeting starts the clock for objections to discharge here just as it starts the

12

clock for filing objections to exemptions in the normal course under Rule 4003(b)(1). And a few trial courts, along with two of our sister circuits, have considered -- in evaluating the timeliness of an objection to exemptions -- when a creditors' meeting is concluded. Compare In re Peres, 530 F.3d 375, 378 (5th Cir. 2008) (meeting adjourned sine die not necessarily concluded), with In re Smith, 235 F.3d 472, 476-77 (9th Cir. 2000) (meeting concluded unless adjourned to a stated date and time); see also In re Newman, 428 B.R. 257, 264 (B.A.P. 1st Cir. 2010) (declining to decide between Ninth and Fifth Circuits' approaches); In re Dutkiewicz, 408 B.R. 103, 110 (B.A.P. 6th Cir. 2009) (same). It is from this body of case law that the Trustee mines his approach.

Specifically, the Trustee leans heavily on the methodology outlined in In re Peres, where the creditors' meeting was "continued without a formal announcement as to the date of continuation" and reconvened eleven months later over the debtors' objection. 530 F.3d at 376. The debtors argued that the failure to announce a continued date within thirty days meant the meeting had been concluded. Id. at 377. The Fifth Circuit rejected that argument, holding instead "that § 341(a) creditors' meetings adjourned indefinitely are not concluded, and therefore do not trigger the thirty day deadline" under Rule 4003(b)(1). Id. at 377-78. The court adopted a "case-by-case

13

approach," under which it looked to four factors to "determine whether any delay in reconvening the meeting was reasonable." Id. at 378.[4] The Trustee argues that we should adopt In re Peres as the blueprint for determining when the creditors' meeting was concluded here. We see two difficulties with adopting this approach.

First, in In re Peres, the trustee reconvened the meeting after the adjournment sine die. Thus, the chronology facing the court included (1) a creditors' meeting continued without an adjournment date, followed by (2) an eleven-month break, followed by (3) another creditors' meeting. The court's task was to decide which of those two meeting dates marked the official conclusion of the creditor's meeting. It held that an 11-month hiatus was reasonable and that the meeting did not conclude until the latter date. Id. at 378. Here, by contrast, the creditors' meeting never reconvened following the attempted adjournment on July 19. We cannot "determine whether any delay in reconvening the meeting was reasonable," id., when the meeting was never reconvened. There seems to us a significant difference in holding that a creditors' meeting concluded on the

---

[4] The four factors governing this approach are: "(1) the length of the delay; (2) the complexity of the estate; (3) the cooperativeness of the debtor; and (4) the existence of any ambiguity regarding whether the trustee continued or concluded the meeting." In re Peres, 530 F.3d at 378.

14

final date the trustee convened the creditors, as in In re Peres, and holding, as the Trustee would have us do here, that the meeting concluded at some point after that date, when no meeting was scheduled and no creditors were convened.[5]

The second, and perhaps even more striking, problem with following the In re Peres approach is that the court there interpreted the pre-2011 version of Rule 2003(e). In the absence of the clear prohibition the amendment imposed, the In re Peres court sought merely to "restrain[]" the trustee's "ability to indefinitely postpone a meeting of the creditors" through its four-factor balancing test. 530 F.3d at 378 (emphasis added). In 2011, the Rules Committee went further: it eliminated that ability altogether. Although the Trustee claims that "decisions since the amendment to Rule 2003(e) support application of the case-by-case approach," Appellee's Br. 31, in fact he can cite only one post-2011 case that stops short of explicitly rejecting the approach followed in In re Peres. See In re PMC Mktg. Corp., 482 B.R. 74, 80 (Bankr.

---

[5] Perhaps in recognition of this problem, the Trustee maintains that the focus of the case-by-case approach is whether a delay in concluding, rather than in reconvening, a meeting was reasonable. See Appellee's Br. 34. But this slight pivot constitutes an attempt to mask a fundamental difference in the analysis. By asking us to consider whether he was reasonable in delaying the meeting's conclusion beyond July 19, the Trustee suggests that a creditors' meeting may conclude at some point other than when the meeting's attendees are convened. That is not a possibility the Fifth Circuit considered in In re Peres.

15

D.P.R. 2012) (applying both the case-by-case approach and the alternative bright-line approach, to identical effect). And even that case recognizes that the amendment "required trustee's [sic.] to take formal steps to effectuate a continuance[,] . . . thereby eliminating the use of the term sine die." Id. Moreover, we note that the only other court squarely to consider the issue since Rule 2003(e) was amended has unambiguously rejected the case-by-case approach. See In re Vierstra, 490 B.R. 146, 151 (Bankr. D. Mass. 2013) (amendment to Rule 2003(e) "inexorably leads" to conclusion that case-by-case approach no longer valid).

In sum, the Trustee asks us to ignore what was undeniably a violation of Rule 2003(e). Though he attempted to adjourn the creditors' meeting on July 19, 2012, he failed either to announce the date and time of the adjourned meeting or to file a statement thereafter containing that information. Because Rule 2003(e) unambiguously requires these actions to effectuate an adjournment, the meeting was never adjourned. And because the meeting was never adjourned, we hold it was concluded.

IV.

Though we rule in Jenkins's favor today, we stop short of adopting the "bright-line approach" that he espouses and that has emerged as an alternative to the case-by-case approach. The

16

bright-line approach dictates that "[t]he result of the failure to adjourn a creditors' meeting pursuant to Rule 2003(e) is the [per se] conclusion of the creditors' meeting." Appellant's Br. 22; see also In re Smith, 235 F.3d at 477.

We agree that the Trustee's failure here yields that result, but we hesitate to impose such a penalty for all possible Rule 2003(e) violations. This strikes us as particularly prudent given that neither the Code nor the Bankruptcy Rules attach consequences to the failure to properly adjourn a meeting. And because both the Code and the Rules are replete with explicit consequences, we presume this congressional silence to be intentional. See, e.g., Fed. R. Bankr. P. 4004(c)(1) (consequence for the "expiration of the times fixed for objecting to discharge" is the "grant[ing of] the discharge"); 11 U.S.C. § 522(l) (consequence of failure to object to property listed as exempt is declaration of the property as exempt).

Moreover, administering Rule 2003(e) in the bright-line fashion Jenkins suggests may lead to draconian -- and, we think, unwise -- results. One can imagine, for instance, a trustee failing to announce at the initial meeting the adjourned date and time, but promptly thereafter filing written notice setting forth that information. Though not in strict accordance with Rule 2003(e)'s twin requirements, such action may not warrant an

17

automatic declaration of the meeting's conclusion as of the date of the improperly adjourned meeting. We see no upside to hamstringing future courts that may reasonably find a trustee substantially complied with Rule 2003(e).[6]

Nothing, however, dissuades us from our holding that this is not such a case. The Trustee made no attempt to comply with any part of Rule 2003(e), and made no effort to reconvene the meeting he claims he merely adjourned. Instead, the Trustee asks us to hold that the meeting concluded not when the meeting's attendees were last convened, but at some later point marked only by a docket entry. Such a holding would stretch the language of Rule 2003(e) too far.

The Trustee had ample tools to avoid this result. He could have properly adjourned the meeting on July 19, or he could have timely filed the complaint a mere nine days earlier. At base, this is a case of failure to meet a deadline. And although, especially in bankruptcy, deadlines may produce "unwelcome results," they also "produce finality" by "prompt[ing] parties

---

[6] In addition, bankruptcy courts of course retain "equitable powers" that may "be exercised within the confines of the Bankruptcy Code." Siegel, 134 S. Ct. at 1194 (internal quotation marks and citations omitted). Given this latitude, a bankruptcy court may also conclude that extraordinary circumstances excuse a failure to comply with Rule 2003(e), thus precluding a declaration of the meeting's conclusion. Such instances will be rare, however, given that compliance with Rule 2003(e) requires very little and is entirely within the trustee's control.

to act." Taylor v. Freeland & Kronz, 503 U.S. 638, 644 (1992). When parties fail to heed the warnings inherent in deadlines, their interests must often yield, as the Trustee's do here, to the virtue of such finality.[7]

V.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED

---

[7] The Trustee contends that even if his complaint was not timely, we should "sua sponte deny entry of discharge." Appellee's Br. 39. The Bankruptcy Rules, however, provide that, "[i]n a chapter 7 case, on expiration of the times fixed for objecting to discharge . . . the court shall forthwith grant the discharge." Fed. R. Bankr. P. 4004(c)(1) (emphasis added). To be sure, exceptions to this automatic discharge exist, see Fed. R. Bankr. P. 4004(c)(1)(A)-(L), but the Trustee does not argue that any of these exceptions apply here. Rather, he asserts that Rule 4004(c)(1) conflicts with the Bankruptcy Code, a clash in which "the Bankruptcy Code prevails." Appellee's Br. 40. But, in fact, Rule 4004(c)(1) entirely accords with the Code. In 11 U.S.C. § 727(a), the Code provides a number of scenarios under which a debtor is ineligible for discharge, and in § 727(c)(1), empowers the trustee to object to discharge on those grounds. Rule 4004(c)(1) reflects the judgment that once the trustee's opportunity to object has passed, the discharge will be granted even if a timely objection might have been successful. The Trustee argues that this notion offends "[t]he frequently cited purpose of bankruptcy . . . to afford [only] the honest but unfortunate debtor . . . a fresh start." Appellee's Br. 40 (quotation marks and citation omitted). Not so. Rather, this result balances such worthy aims against the equally critical need for efficiency and finality in the administration of bankruptcy estates.