# United States Court of Appeals for the Fifth Circuit

_____

United States Court of Appeals
Fifth Circuit

**FILED**
November 17, 2025

Lyle W. Cayce
Clerk

No. 24-10883

_____

IN THE MATTER OF JOSEPH F. LANGSTON, JR.,

*Debtor*,

JOSEPH F. LANGSTON, JR.,

*Appellant*,

*versus*

DALLAS COMMODITY COMPANY,

*Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-1916

_____

Before SOUTHWICK, HIGGINSON, and WILSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:

Bankruptcy Rule 4003(b)(1) requires a party objecting to a debtor's claim that property is exempt from administration by the bankruptcy estate to file such objection within 30 days of the conclusion of the 341 meeting of

creditors (the "341 meeting").[1] Fed. R. Bankr. P. 4003(b)(1). Bankruptcy Rule 2003(e) provides that when adjourning, rather than concluding, the section 341 meeting, the trustee "must promptly file a statement showing the adjournment and the date and time to reconvene." Fed. R. Bankr. P. 2003(e).[2]

This appeal concerns the effect of a trustee's failure to follow Bankruptcy Rule 2003(e) on the time a creditor has to file an objection to the debtor's property exemption claims under Bankruptcy Rule 4003(b)(1). The debtor, Joseph F. Langston, Jr., argues that the 2011 amendment to Bankruptcy Rule 2003(e) created a bright-line rule with respect to how a trustee adjourns, or continues, a 341 meeting, abrogating *Matter of Peres*, 530 F.3d 375 (5th Cir. 2008), and thus requires dismissal of creditor Dallas Commodity Company's allegedly untimely objection to Langston's claimed exemptions.

Although we disagree with the district court's reasoning, we AFFIRM its holding that the bankruptcy court properly sustained Dallas Commodity's objection under Bankruptcy Rule 4003(b)(1), because Langston waived his right to object to its untimeliness.

---

[1] Section 341 of the Bankruptcy Code provides: "Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341.

[2] As will be discussed below in greater detail, Bankruptcy Rule 2003(e) was amended in 2011. The prior version of Bankruptcy Rule 2003(e) stated that the 341 meeting "may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice."

No. 24-10883

## I.

## A.

Dallas Commodity sued Langston individually, along with the Langston Family Limited Partnership ("Langston LP"), in state court and obtained a jury verdict resulting in a judgment of approximately $1.5 million against both Langston and Langston LP. Langston then filed a petition for relief under chapter 7 of the Bankruptcy Code on September 6, 2019. Three days after filing his personal bankruptcy case, Langston put Langston LP into a separate involuntary chapter 7 bankruptcy case. In his personal bankruptcy case, Langston claimed exemption in two Individual Retirement Accounts (the "IRAs") holding in excess of $500,000.

The chapter 7 trustee appointed to Langston's case (the "Trustee") reconvened the 341 meeting multiple times so that Langston could have more time to provide additional documents to both Dallas Commodity and the Langston LP trustee. What turned out to be the final 341 meeting was held on May 26, 2021 (the "May 26 Meeting"). At the end of the May 26 Meeting, there was a discussion between counsel for Dallas Commodity, counsel for Langston, the Trustee, and Langston during which all agreed that: 1) Langston would amend his bankruptcy schedules; 2) Dallas Commodity would prepare a transcript of the 341 meeting and provide Langston's counsel with a list of additional requested documents and any further questions for Langston; and 3) the Trustee would "get back to" counsel about a continued date for the 341 meeting. At no point during this discussion did Langston or his counsel object to continuing the meeting or indicate that they did not agree to amending the bankruptcy schedules or providing additional documents.

Following this meeting, however, the Trustee did not file a statement with a continued date and time for the 341 meeting into the record as required

3

No. 24-10883

under Bankruptcy Rule 2003(e). Rather, on July 31, 2021, the Trustee filed an "interim report" that contained a summary of the case status. That report explained that Dallas Commodity had been actively participating in Langston's bankruptcy case and the Langston LP case and that disputes had arisen with Langston's counsel over document production, but the parties were working towards resolution. The report further stated: "A continued, and hopefully, final 341 meeting in this estate will be scheduled shortly to complete the [] examination allowing the two bankruptcy estates to propose a compromise that will resolve the contested claims in both estates."

On August 11, 2021, the Langston LP trustee filed an application in the Langston LP case to employ Dallas Commodity's counsel, Kaplan & Moon ("K&M") on a contingent fee basis as the Langston LP trustee's special counsel to pursue claims on behalf of the Langston LP bankruptcy estate.[3]

On September 8, 2021, the Langston LP trustee filed a complaint against Langston in an adversary proceeding associated with the Langston LP bankruptcy (the "Complaint").[4] The Langston LP trustee simultaneously filed an emergency motion to lift the automatic stay in the Langston bankruptcy case for the purpose of prosecuting the Complaint. The Complaint asserted causes of action against Langston relating to the same IRAs in which Langston claimed his exemptions. Langston then amended his bankruptcy schedules on November 17, 2021. After multiple continuances,

---

[3] The bankruptcy court granted the application on an interim basis on September 2, 2021, and granted the application on a final basis after a hearing on September 8, 2021. The Langston LP trustee subsequently filed an application to employ additional special counsel ("Stanford") to assist K&M, which was also granted.

[4] The Complaint initiated Adversary Proceeding No. 21-3062 in the United States Bankruptcy Court for the Northern District of Texas.

Langston and the two trustees submitted to the bankruptcy court an agreed order, dated February 24, 2022 (the "Agreed Order"). The Agreed Order stated that the parties agreed to "abate the [Complaint] until after the Court has ruled on any objections to the Debtor's claimed exemptions and said exemptions have been fixed by the Court."[5]

Just prior to the filing of the Agreed Order, on February 16, 2022, K&M emailed the Trustee, asking that the Trustee "not conclude the meeting of creditors" in Langston's "personal bankruptcy case" because they still needed documents and other information and wanted to further question Mr. Langston before the meeting was concluded. The lengthy email, on which the Langston LP trustee and his counsel were copied, contained a list of issues relating to tax returns for both Langston and Langston LP, as well as a host of other topics.

The Trustee never reconvened the 341 meeting after May 26. Rather, in response to a notice from the clerk's office requesting the minute sheet from the May 26 Meeting, the Trustee made a docket entry on March 9, 2022 (the "March 9 Docket Entry"), that simply stated, "Meeting of creditors held and concluded 5/26/2021." That same day, Stanford contacted the Trustee by email asking, "The docket entry below indicates that the meeting of creditors was closed on May 26, 2021. Did you mean to close it as of today to start the 30-day deadline to object to exemptions?" The Trustee responded, "I meant the time to start today. I want you to have 30 days from today." The Langston LP trustee and K&M were copied on this email.

---

[5] The most recent docket entry in the Adversary Proceeding, dated September 2, 2025, states that the adversary proceeding continues to be abated pending the outcome of this appeal.

B.

On April 8, 2022, Dallas Commodity filed its objection to Langston's claimed exemption in the two IRAs (the "Objection").

At the evidentiary hearing before the bankruptcy court on the Objection, Langston argued that the Objection was untimely because it had been filed more than 30 days from the conclusion of the May 26 Meeting. He asserted that the bankruptcy court's docket did not show any statement continuing the May 26 Meeting. Langston further argued that Bankruptcy Rule 2003(e) deems the 341 meeting concluded unless the trustee announces the adjourned date and time and promptly files a statement specifying the date and time, citing a Fourth Circuit case, *In re Jenkins*, 784 F.3d 230 (4th Cir. 2015).

The bankruptcy court questioned the Trustee about the circumstances of the May 26 Meeting. The Trustee freely admitted he had not complied with Bankruptcy Rule 2003(e) by failing to 1) announce the continued date and time of the 341 meeting at the conclusion of the May 26 Meeting itself, 2) file the required statement announcing the date and time of the continued meeting, and 3) hold another meeting after the May 26 Meeting.

The bankruptcy court overruled Langston's untimeliness objection, acknowledging that the Trustee had not complied with Bankruptcy Rule 2003(e) while also noting both the email from K&M asking the Trustee not to conclude the meeting and the email exchanges following the March 9 Docket Entry. The bankruptcy court stated that the Objection had been filed within 30 days of the March 9 Docket Entry and found that considerations of

No. 24-10883

fairness and due process formed the basis for overruling the untimeliness objection.[6]

Langston appealed the bankruptcy court's decision to the district court, which affirmed the bankruptcy court. With respect to the timeliness of the Objection, the district court held that it was bound by our decision in *Peres*. The district court then applied our four factor test from *Peres*, to find "that the Section 341 creditors' meeting was concluded on March 9, 2022, and that holding it open until that date was not an unreasonable amount of time."

## II.

"We review the decision of a district court, sitting in its appellate capacity, by applying the same standards of review to the bankruptcy court's finding of fact and conclusions of law as applied by the district court." *Matter of Highland Capital* Management, 57 F.4th 494, 499 (5th Cir. 2023) (*citing In re ASARCO, L.L.C.*, 650 F.3d 593, 600 (5th Cir. 2011)). We review the bankruptcy court's conclusions of law, as well as mixed questions of law and fact, *de novo*, and the bankruptcy court's findings of fact for clear error. *Id.*

## III.

The parties agree that the Trustee failed to follow Bankruptcy Rule 2003(e)'s requirement to file a statement showing the adjournment of the 341 meeting and the date and time of the continued meeting. The parties also do not dispute that, despite his statements at the end of the May 26 Meeting, the Trustee failed to reconvene the improperly adjourned 341 meeting.

---

[6] The bankruptcy court then held a two-day evidentiary hearing on the merits of the Objection and ultimately concluded that, because Langston had not followed the provisions of the Internal Revenue Code (26 U.S.C. § 4975) in a multitude of transactions involving the IRAs, those accounts had lost their exempt status.

But the parties disagree on the consequences of the Trustee's actions. Langston argues that when the Trustee failed to file the statement showing the continued date and time of the May 26 Meeting, the meeting was deemed concluded as of May 26 and, therefore, the Dallas Commodity Objection was untimely filed. He argues that the 2011 amendment to Bankruptcy Rule 2003(e) created a bright-line rule abrogating the case-by-case analysis we adopted in *Peres*, hence, the district court's holding that it was bound by *Peres* was erroneous. Dallas Commodity argues that: 1) the bankruptcy court correctly allowed the Objection as timely, 2) *Peres*'s case-by-case approach is still good law, despite the amendment, and 3) even if *Peres* is not still good law, the Bankruptcy Court had equitable power under section 105 of the Bankruptcy Code to overrule the untimeliness argument to prevent an abuse of process by Langston.

We disagree with Langston's argument that the 2011 amendment created a bright-line rule. We also disagree with the district court's finding that the 341 meeting concluded on March 9, 2022. Regardless, Langston waived his right to challenge the timeliness of the Objection when he agreed to continue the May 26 Meeting, so the bankruptcy court correctly overruled Langston's timeliness objection.

A.

Prior to the 2011 amendment, Bankruptcy Rule 2003(e) stated:

> The meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice.

Fed. R. Bankr. P. 2003(e) (2008).

In *Peres*, the chapter 7 trustee continued the 341 meeting twice by announcing the date and time of the continued meeting. *Peres*, 530 F.3d at 376. At the adjournment of the third meeting, the trustee made no announcement

of the adjourned date and time, but a fourth continued meeting *was* subsequently scheduled and held. *Id.* The trustee objected to the debtors' claimed exemptions within 30 days of the fourth continued meeting. *Id.* The debtors asked us to adopt a bright-line rule dictating that the trustee's failure to announce the date and time of the continued meeting at the end of the third meeting meant that the 341 meeting was concluded as of the third meeting and, as such, that the trustee's objection was untimely. *Id.* at 377.

We rejected that approach. We noted that the majority of the courts had rejected the bright-line approach and instead had adopted either a case-by-case approach or required the trustee or the court to declare the 341 meeting concluded. *Id.* We agreed with the case-by-case approach, reasoning that a "strict rule could impede justice in complex cases when a trustee needs further time and information to fully understand a debtor's financial affairs, especially when the debtor agrees to a continuance or refuses to cooperate, and where no evidence of unjustified delay is present." *Id.* at 378. We concluded that the case-by-case approach was preferable to a strict rule, "especially when the debtor agrees to a continuance or refuses to cooperate." *Id.*

## B.

Since we decided *Peres*, Bankruptcy Rule 2003(e) has been amended to require that the trustee file a statement into the record showing the date and time of the continued meeting.  It now states:

> The presiding official may adjourn the meeting from time to time by announcing at the meeting the date and time to reconvene. The presiding official must promptly file a statement showing the adjournment and the date and time to reconvene.

Fed. R. Bankr. P. 2003(e).

No. 24-10883

Since the 2011 amendment, only one Circuit Court has examined amended Bankruptcy Rule 2003(e). *See In re Jenkins*, 784 F.3d 230 (4th Cir. 2015).

In *Jenkins*, the Fourth Circuit declined to adopt a bright-line approach dictating that "the result of the failure to adjourn a creditors' meeting pursuant to Bankruptcy Rule 2003(e) is the per se conclusion of the creditors' meeting." *Id.* at 238 (cleaned up). Because the Bankruptcy Rules do not set forth any penalty or consequences for the failure to properly adjourn a meeting, the Fourth Circuit found that adopting a bright-line approach imposing such a penalty would be imprudent.[7]

The Fourth Circuit in *Jenkins* faced similar facts as are presented in the instant appeal. There, the trustee's counsel stated "officially the meeting is continued" but filed no statement of the continued date and time into the record. The trustee never reconvened the meeting. *Id.* at 233–34. The trustee filed an untimely complaint, and then several months after filing the complaint, filed a statement into the record that the 341 meeting was concluded as of that later date, even though no continued 341 meeting was ever held. The trustee in *Jenkins* asked the Fourth Circuit to adopt our four-factor test in *Peres* to determine "whether any delay in reconvening the meeting was reasonable." *Id.* at 237. The Fourth Circuit rightly noted that there is "a significant difference in holding that a creditors' meeting concluded on the final date the trustee convened the creditors," as in *Peres*, and holding "that the

---

[7] For example, the Fourth Circuit pointed out that in the context of Bankruptcy Rule 4004(c)(1), which fixes the time for objecting to a debtor's discharge, the consequence of failing to act timely is the granting of the discharge. Similarly, section 522(l) provides that the consequence of failure to object to property listed as exempt is declaration that the property as exempt. In contrast, no consequence is set forth in Bankruptcy Rule 2003(e) for the failure of the trustee to file the statement showing the adjournment. *Jenkins* at 238.

No. 24-10883

meeting concluded at some point after that date, when no meeting was scheduled and no creditors were convened." *Id.*

This point highlights an issue with the district court's approach in the instant case in deciding the appeal from the bankruptcy court. Here too, there was no further meeting after the May 26 Meeting. The district court's holding that the meeting "concluded" with the March 9 Docket Entry would create a fiction that cannot be supported. Moreover, it conflicts with our holding in *Peres*. In *Peres*, we noted that several courts had adopted the approach that the 341 meeting was not concluded until "the trustee so declares or the court so orders," *Peres*, 530 F.3d at 378, but rejected that approach "because it would permit a trustee to continue a meeting of creditors indefinitely." *Id.* (first citing *In re Koss*, 319 B.R. 317, 321 (Bankr. D. Mass. 2005), then citing *In re Flynn*, 200 B.R. 481, 484 (Bankr. D. Mass. 1996), and finally citing *In re DiGregorio*, 187 B.R. 273, 276 (Bankr. N.D. Ill. 1995)).

Langston argues that the purpose of the 2011 amendment was to adopt the bright-line rule approach that we rejected in *Peres*.[8] He further argues that since the Trustee here failed to file a statement showing the date and time of

_____

[8] The commentary surrounding the 2011 amendment does not support the argument that the purpose of the amendment was to adopt the bright-line approach in the case law. The proposal to amend Bankruptcy Rule 2003(e) was based on an unrelated concern with the requirement in section 1308 of the Bankruptcy Code requiring debtors to file tax returns prior to the 341 meeting, and a related provision in section 1307(e) requiring conversion or dismissal of cases where the debtors had failed to do so. Fed. R. Bankr. P. 2003(e) advisory committee's notes to 2011 amendment; Advisory Committee on Bankruptcy Rules Meeting Minutes from March 26–27, 2009 at 100-03, found at https://www.uscourts.gov/sites/default/files/fr_import/BK2009-03.pdf. The advisory committee notes also state that the new requirement "will provide notice to parties in interest not present at the initial meeting of the date and time to which the meeting has been continued." Fed. R. Bankr. P. 2003(e) advisory committee's notes to 2011 amendment; *see also* 9 Collier on Bankruptcy ¶ 2003.05 (16th ed. 2025).

11

No. 24-10883

the continuance, the meeting should be deemed concluded as of May 26, and not on March 9, as determined by the district court.

Because there was no continued 341 meeting, the four factor test we set forth in *Peres* to determine the reasonableness of delay in adjourning a meeting of creditors is not applicable here. Today we need not determine how, or whether, the 2011 amendment might affect those factors. Like the Fourth Circuit, we decline to adopt the bright-line rule approach urged by Langston.[9]

## C.

### 1.

In this case the 341 meeting concluded on May 26, 2021, when the last meeting was convened. Dallas Commodity's Objection—filed on April 8, 2022—was not within the 30-day window set by Bankruptcy Rule 4003(b)(1). But the analysis does not end there.

The Bankruptcy Rules, like other federal rules, "do not create or withdraw federal jurisdiction." *In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 575 (5th Cir. 2024) (internal quotation marks and citation omitted); *see Kontrick v. Ryan*, 540 U.S. 443, 453 (2004) (holding that the time limit for filing an objection to a debtor's discharge under Bankruptcy Rule 4004(a) is not jurisdictional). Only Congress can create procedural requirements with

---

[9] Langston points primarily to two bankruptcy decisions that adopted the bright-line approach. *See In re Brown*, 314 B.R. 416 (B.A.P. 1st Cir. 2020); *In re Vierstra*, 490 B.R. 146 (Bankr. D. Mass. 2013). But the cases upon which Langston relies, like *Jenkins*, all address a *trustee's* attempt to file an objection after the *trustee* has failed to adhere to Bankruptcy Rule 2003(e). In none of these cases was a *creditor* prejudiced by a trustee's failure to follow Bankruptcy Rule 2003(e). In fact, as Langston acknowledged at oral argument, he has pointed to no case that has forfeited a creditor's claim because of trustee oversight. We note that this case shows the necessity for all parties to be vigilant regarding the proper continuation of 341 meetings under Bankruptcy Rule 2003(e).

jurisdictional consequences. *In re Serta*, 125 F.4th at 575. Like Bankruptcy Rule 4004(a), Bankruptcy Rule 4003(b)(1) is a claims-processing rule. *Cf. Kontrick*, 540 U.S. at 454, 456. One of the purposes served by a claims-processing rule is to afford the debtor an affirmative defense to a complaint or objection filed outside the time limits set forth in the rule. *See id.* at 456.

The time limits set forth in the Bankruptcy Rules are subject to equitable defenses. *See In re Kontrick*, 295 F.3d 724, 733 (7th Cir. 2002) *aff'd sub nom. Kontrick*, 540 U.S. 443 (finding Bankruptcy Rule 4004(a) is subject to waiver); *In re Benedict*, 90 F.3d 50, 54–55 (2d Cir. 1996) (Bankruptcy Rule 4007(c) time limit is subject to waiver); *In re Santos*, 112 B.R. 1001, 1008 (9th Cir. BAP 1990) (Bankruptcy Rules 4004(a) and 4007(c) are subject to waiver). Such is the case with Bankruptcy Rule 4003(b)(1), which, in setting the time within which to raise objections to claimed exemptions, is also subject to equitable defenses. One such defense is waiver. "Waiver involves the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Matador Petroleum Corp. v. St. Paul Surplus Lines*, 174 F.3d 653, 660 (5th Cir. 1999); *see also Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1191 (5th Cir. 1993) ("Waiver involves the voluntary or intentional surrender of a known right."). (internal quotation marks and citation omitted). Waiver may be also established by showing that a party intentionally engaged in conduct inconsistent with claiming a right. *Id.* (citation omitted).

### 2.

We decide Langston waived his timeliness objection.

The transcript of the 341 meeting shows that Langston agreed to the continuance of the May 26 Meeting so that he could have the opportunity to amend his schedules and provide additional documents to Dallas Commodity. The record shows that Langston did in fact amend his

bankruptcy schedules. The record also demonstrates that Langston used the time between the May 26 Meeting and the March 9 Docket Entry to negotiate the Agreed Order with the Trustee and the Langston LP trustee. Finally, the record shows that Langston made no objection to the improper continuation of the 341 meeting until *after* Dallas Commodity filed the Objection.

Langston benefitted from the additional time he was given to amend his schedules and provide additional documents, and he availed himself of the extra time to actually file the amended schedules. During this time period, Langston negotiated the Agreed Order with the two trustees. The Agreed Order contemplated that there would be an objection to his claim of exemptions. It would make no sense for the two bankruptcy trustees to enter into the Agreed Order with Langston if he had told them, prior to executing the Agreed Order, he was taking the position that the time for filing objections to his exemptions had passed. Langston's agreement to the continuance of the 341 meeting was intentional, and he does not claim otherwise.

Langston's actions both during and after the May 26 Meeting show that Langston waived his right to insist that the objection deadline in Bankruptcy Rule 4003(b) be enforced. *See, e.g.*, *In re Cherry*, 341 B.R. 581 (Bankr. S.D. Tex. 2006) (finding waiver of an allegedly improper continuance where debtor agreed to continue the 341 meeting and engaged extensively with the trustee without objection).

## IV.

We hold that the bankruptcy court did not err in overruling Langston's objection to the timeliness of the Dallas Commodity Objection, because Langston waived his right to complain that the Objection was untimely when he affirmatively acquiesced to the continuance of the May 26

No. 24-10883

Meeting. We AFFIRM the district court in its judgment affirming the bankruptcy court.